ECONOMIC DEVELOPMENT AND INDUSTRIAL CORPORATION, et al., Plaintiffs, Appellees,

v.

UNITED STATES of America, General Services Administration, Defendants, Appellants.

No. 82–1845.

United States Court of Appeals, First Circuit.

Sept. 28, 1983.

Jennele M. Morris, Atty., Dept. of Justice, Land and Natural Resources Division, Washington, D.C., with whom Carol E. Dinkins, Asst. Atty. Gen., Washington, D.C., William F. Weld, U.S. Atty., Boston, Mass., and Robert L. Klarquist, Atty., Dept. of Justice, Washington, D.C., were on brief, for the United States of America.

Stephen Carr Anderson, Boston, Mass., with whom Malcolm Pittman, Rackemann, Sawyer & Brewster, Daniel B. Bickford, and Gaston Snow & Ely Bartlett, Boston, Mass., were on brief, for plaintiffs, appellees.

Before CAMPBELL, Chief Judge, HAYNSWORTH,* Senior Circuit Judge, and BREYER, Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

In this action involving a disputed title to real estate, the district court, 546 F.Supp.

* Of the Fourth Circuit, sitting by designation.

1204, decided the case on the merits. It concluded that a conditional right of reverter reserved by the Commonwealth of Massachusetts became unenforceable when the Commonwealth failed to rerecord the right pursuant to a subsequently enacted recording statute but that the right of reverter was revived by two subsequently enacted statutes which purported retrospectively to exempt the Commonwealth from the earlier recording statute. Since the land was no longer being used by the United States for naval purposes, it concluded that title to the land had reverted to the Commonwealth and to the plaintiffs, public agencies to which the interest of the Commonwealth had been assigned. It entered judgment for the plaintiffs.

On the appeal of the United States, the parties addressed themselves to the merits, the principal question being whether or not the Commonwealth could retrospectively exempt itself from the recording act after its right of reverter had become unenforceable. Subsequently, we perceived a problem under the federal Quiet Title Act of 1972, 28 U.S.C.A. § 2409a. On request, supplemental briefs were filed, and we now conclude that maintenance of the action is barred by the sovereign immunity of the United States.

### I.

In 1941, Massachusetts conveyed a parcel of land to the United States for use in expanding the dry dock facilities of the South Boston Naval Annex. The deed expressly provided, however, that title to, and exclusive jurisdiction over, the property would revert to the Commonwealth "whenever said area shall cease to be used for naval purposes." In November 1975, the United States Navy officially declared the property to be surplus, and its use for naval purposes was discontinued.

In 1956, the Commonwealth enacted a statute designed to protect the title to land against certain possibilities of reverter and rights of entry. It barred any proceeding based upon any possibility of reverter created before January 2, 1955 unless on or before January 1, 1964[1] the holder of the reversionary interest filed a written notice and description of his claim in the registry of deeds.

The Commonwealth of Massachusetts filed no such notice, though by the third paragraph of § 2 of the 1956 Act it was declared applicable whether or not the owner of the reversionary interest was "a government or governmental subdivision."

In 1968 the Massachusetts General Court amended the 1956 Act by inserting the words "other than the Commonwealth" in the sentence stating the applicability of the 1956 Act whether or not the owner of the reversionary interest was "a government or governmental subdivision." Mass.St.1968, c. 496. In 1974, yet another statute was enacted stating, in effect, that it never had been the intention of the General Court that the 1956 statute should apply to possibilities of reverter or rights of entry reserved to itself by the Commonwealth in deeds conveying lands to others.

After the United States had abandoned the use of the land for naval purposes and the dispute over the title had come into the open, the Economic Development and Industrial Corporation of Boston and the Governmental Land Bank, a public agency of the Commonwealth of Massachusetts, wished to acquire that and other surplus land formerly part of the Navy Yard Annex. Pursuant to a stipulation and agreement, the General Services Administration of the United States conveyed the land to Governmental Land Bank for $4,290,000, of which the United States agreed to hold in a special account $1,587,300, the agreed value of the land in dispute. It was contemplated that the acquiring agency would bring an action against the United States to quiet title to the land and disposition of the funds in the special account was to abide the outcome of such litigation.

1. As originally enacted, the cutoff date was January 1, 1966. By amendment, it was changed to January 1, 1964.

On the same day that the Governmental Land Bank purchased the property, it reconveyed the property to the Economic Development and Industrial Corporation of Boston, receiving in payment a note secured by a mortgage.

This action was commenced in 1978, the plaintiffs alleging that title to the land reverted to the Commonwealth in 1975 pursuant to the possibility of reverter reserved to the Commonwealth in its 1941 deed. The United States contended that the right of reverter was extinguished, or became unenforceable, on January 1, 1964, and that the later attempts to revive it were unconstitutional and ineffective. As indicated, the district court held that the 1956 statute applied to reversionary interests possessed by the Commonwealth, and, though this one became unenforceable on January 1, 1964, the 1968 and 1974 statutes effectively made it enforceable.

## II.

█ The Quiet Title Act of 1972, 28 U.S. C.A. § 2409a, is a limited waiver of the sovereign immunity of the United States. With some exceptions, it permits maintenance of actions against the United States to quiet title to lands in which the United States claims an interest, but subsection (f) provides that any civil action under that section is barred unless commenced within twelve years of the date upon which it accrued. It explicitly provides that accrual of the right of action occurs when the plaintiff, or its predecessor in interest, "knew or should have known of the claim of the United States." Because it is a limited waiver of the sovereign immunity of the United States, the Supreme Court of the United States has recently held that it provides the exclusive remedy for one seeking to establish title in itself to lands in which the United States claims an interest. *Block v. North Dakota,* —— U.S. ——, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983). The limitation is applicable even though the claimant is a state, as the Supreme Court held in *Block,* and, because sovereign immunity is involved, there must be strict compliance with the requirement that any action must be commenced within twelve years of its accrual. *Block v. North Dakota, supra.*

█ The Commonwealth's right of action accrued on January 1, 1964. It is chargeable with knowledge of its own statute, and the statute provides abundant basis for the claim by the United States that the Commonwealth's possibility of reverter was thereafter no longer enforceable. The claimed interest of the United States, insofar as it was or might have been disputed, was that its title had become indefeasible. Since the Commonwealth was aware of the basis of the claimed interest of the United States in 1964, the cause of action then accrued under the provision of § 2409a(f).

It does not matter that the claim of the United States may have been open to some dispute. It was a reasonable claim with a substantial basis. The 1956 statute provided for its application even though the old possibility of reverter was owned by "a government or governmental subdivision." That the district court held that it would apply here attests the substantiality of the claim of the United States. Nor did it become insubstantial upon enactment of the later amendments of 1968 and 1974. If the title of the United States, in effect, had become indefeasible in 1964, a retroactive application of subsequent statutes purporting to make it determinable, at the very least, is of questionable validity. Thus, from January 1, 1964 on, the Commonwealth was chargeable with notice of the claimed interest of the United States and could have brought a quiet title action within twelve years of that date.[2] It did not do that.

Nor does it matter that those officials of the United States charged with duties in connection with the maintenance of the property and the protection of the interest of the United States in it were unaware of

---

**2.** Of course, it could not have brought an action under the Quiet Title Act of 1972 before its enactment. It was free to bring such an action, however, from the date of its enactment until January 1, 1976, when the twelve-year period ran out.

the basis for a claim that the Commonwealth's possibility of reverter had become unenforceable. Unlike the Commonwealth, those federal officials and the United States itself are not chargeable with notice of statutes enacted by the Commonwealth in 1956, 1968 and 1974. Nor can a naval officer's recognition of a continuing possibility of reverter serve as a waiver or relinquishment of the interest of the United States. The officers were obviously unaware of the 1956 Massachusetts statute which created the basis for the claim that the possibility of reverter was no longer enforceable. Moreover, had they known of the statute, they were not authorized to transfer or relinquish an interest in land owned by the United States.

### III.

The plaintiffs find some comfort in *Block v. North Dakota*. They think a passing discussion of the effect of the bar of the Quiet Title Act supports their position on the merits. The merits, of course, are not before us if the action is barred by paragraph (f) of the Quiet Title Act, but to the extent that the plaintiffs' discussion of *Block v. North Dakota* may be construed as a contention that the claimed interest of the United States was insubstantial after 1968 or 1974, it deserves mention.

North Dakota contended that unless its action against the United States was permitted to proceed, the result would be an unconstitutional taking of its property without just compensation. The response of the Supreme Court was that the bar of the Quiet Title Act prevented maintenance of the action against the United States but did not purport to transfer title. If, in fact, title to the stream beds was vested in North Dakota, notwithstanding the bar of the Quiet Title Act, it remained in North Dakota.[3]

The plaintiffs contend that the 1956 Massachusetts act is a comparable statute of limitations. That statute, however, is essentially a recording act. A pre-1955 reversionary interest may not be enforced at all unless the owner of the right files and records a descriptive statement of it in the registry of deeds on or before January 1, 1964. To preserve the right, the owner must record it within the time prescribed, and the recording requirement applies to persons under disability. The statute does not purport to create a time bar for the initiation of an action to enforce a reversionary right that has matured into a right of possession. The apparent purpose of the statute was to free land titles from the clouds and restrictions of ancient reservations of reversionary interests unless those interests were made the subject of a contemporary recording with proper indexing. The practical consequence was that on January 1, 1964, the title of the United States became freed of the cloud theretofore upon it.

Application of the bar of the Quiet Title Act of 1972, indeed, does not give the United States a marketable title. A private transferee under a deed from the United States would not enjoy the protection of that statute. The bar of the 1956 Massachusetts statute, however, prohibits assertion of the old, unrecorded, reversionary interest against everyone. Application of that statute freed the title to the land from the cloud of the unrecorded, pre-1955, reserved reversionary interest, for it can be asserted against no one.

Under these circumstances, the claim of the United States that the statute's effect was to extinguish the Commonwealth's right is not insubstantial.

### IV.

Because of the sovereign immunity of the United States, the district court was without jurisdiction to consider the merits of the plaintiffs' claim. Its judgment must be reversed and the case remanded with directions to dismiss the complaint.

REVERSED AND REMANDED.

---

**3.** The fact that North Dakota might continue to proclaim that it was the owner of the stream beds would do it little good if it could not quiet title in itself or terminate the federal licensing activity to which it objected.