ECONOMIC DEVELOPMENT AND IN-DUSTRIAL CORPORATION OF BOS-TON and Government Land Bank, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 280–78.

United States Claims Court.

Feb. 9, 1987.

Raymond J. Brassard and Daniel B. Bickford, Boston, Mass., for plaintiffs.

Jose R. Allen, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht, II, for defendant.

## OPINION

### MOODY R. TIDWELL, III, Judge:

This case comes before the court on defendant's motion for summary judgment and plaintiffs' motion for partial summary judgment on liability. The motions are intended to enable the court to determine whether legal title to land at the South Boston Naval Annex, Massachusetts can be challenged judicially by the Commonwealth of Massachusetts. Plaintiffs' position is that the United States took the land without just compensation therefor. Defendant

is of the opinion that from 1956 it has had clear title to the land in dispute by operation of Massachusetts law, so that there was no taking.

## FACTS

In 1941 the Commonwealth of Massachusetts ceded title of a parcel of land to the United States for use as a naval facility. 1941, Mass.St. c. 535. The preamble of the legislative grant stated that the purpose of the Act was to provide "land for the immediate extension of the Navy dry dock property in Boston Harbor for the purpose of National Defense." The key phrase of the grant, for purposes of this suit, provided that title to the land would revert to the Commonwealth "whenever said areas shall cease to be used for naval purposes." The parcel of land in question consists of 67 acres, less 2.18 acres and easements retained by defendant, and is identified as Parcel 2.[1] Parcel 1 is not part of this case.

On April 10, 1956, the Commonwealth enacted legislation entitled "An Act Protecting Title To Land Against Certain Rights Of Entry And Possibilities Of Reverter And Limiting The Bringing of Proceedings to Enforce Such Rights." The Act provided, among other things, that no proceeding based upon any possibility of reverter created before January 2, 1955 could be maintained either at law or in equity in any court unless on or before January 1, 1964[2] the person(s) entitled to the reverter (the Commonwealth here) "have filed in the registry of deeds ... a statement in writing, duly sworn to, describing the land and the nature of the right and the deed or other instrument creating it, and where it may be found if recorded ... naming the person or persons appearing of record who own the fee sub-

---

1. Plaintiffs have elected to entitle their motion as a "partial" motion for summary judgment because it addresses only 64.82 acres of Parcel 2. Plaintiffs stated in their brief that the 2.18 acres and certain easements retained by defendant were not part of this litigation, but might be litigated in some possible future action. For all practical purposes, plaintiffs' "partial" motion, if allowed, would effectively resolve all of the issues in the case at bar. Accordingly, the court

will treat plaintiffs' motion as a "complete" motion for summary judgment for purposes of this litigation.

2. The 1956 Act originally called for the filing of notice of reverters, etc., no later than January 1, 1966. The Massachusetts legislature later amended the Act by providing that such notice be filed no later than January 1, 1964.

ject to such right or possibility." Furthermore, the legislation stated that it applied:

[T]o all such rights whether or not the owner thereof is a corporation or a charity or a government or governmental subdivision, or is under any disability or out of the commonwealth, and it shall apply notwithstanding any recitals in deeds or other instruments heretofore or hereafter recorded, unless a statement is filed as above provided.

Mass. G.L. c. 260, § 31A.

The Commonwealth never filed the statement of its reversionary interest in Parcel 2 in the registry of deeds office and, in fact, it appears from the record that the Commonwealth made no such filing for other rights of entry or reverters that it held. The purpose of the 1956 Act (the Limiting Act) was to prevent holders of reverters or similar rights of entry, some of which were centuries old, from bringing legal proceedings to enforce the reverters unless notice of the same was filed in the appropriate register of deeds by a date eight years hence, *i.e.*, January 1, 1964. By so doing, land titles would be freed from the clouds and restrictions of ancient reservations of reversionary interests unless those interests were made the subject of a contemporary recording with proper indexing. Defendant has taken the position that the phrase, that the Limiting Act applies "to all such rights whether or not the owner thereof ... is a government or governmental subdivision," to include the Commonwealth (as a government), and that by failing to so file, plaintiffs cannot now bring legal action to enforce the reverter, thereby rendering its reversionary interest a nullity.

In 1968 the Massachusetts legislature amended the Limiting Act by adding language in an attempt to exempt the Commonwealth from the filing requirements of the 1956 Act. As amended, the coverage section now reads:

This section shall apply to all such rights whether or not the owner thereof is a corporation or a charity or a government or governmental subdivision, other than the Commonwealth, or is under any disability or out of the Commonwealth, and it shall apply notwithstanding any recitals in deeds or other instructions heretofore or hereafter recorded, unless a statement is filed as [provided in this Act].

Mass.St.1968, c. 496 (added language underlined).

Eighteen years after passage of the 1956 Limiting Act the Massachusetts legislature, in 1974, yet again amended the Act by adding "clarifying" language to the effect that it had never been the intent of the legislature, even in 1956, to make the Commonwealth subject to the Limiting Act. Mass.St.1974, c. 527. In a "statement of legislative purpose" the 1974 Act provided:

The [legislature] notes that the insertion in the General Laws of [G.L. c. 260, § 31A] ... [has], contrary to the legislative intent thereof, created the misapprehension that [it] applied to lands owned and conveyed by the commonwealth subject to certain limitations. The [legislature] further notes that, despite the longstanding canon of statutory construction that a procedural statute has retrospective as well as prospective effect, some misapprehension exists as to the proper construction of said section thirty-one A, as amended [in 1968]. In order that the original intent of the legislature might now be clarified and the inapplicability of the above mentioned statutes to commonwealth grants and conveyances might be fixed with certainty, the [legislature] deems it necessary and in the public interest to enact this clarifying legislation. . . .

The provisions of [G.L. c. 260, § 31A], as most recently amended [in 1968], shall not be construed to apply to, and do not apply to, reversionary interests upon fee simple determinables or fee simples subject to the right of entry or condition broken of the commonwealth, whether created before or after the effective date of the passage of this act, in lands owned and conveyed by the commonwealth, not-

withstanding any lapse of time or the passage of any prior law....

This act shall be retrospective as well as prospective in its application, applying to all grants by the commonwealth whether created before or after its effective date.

Mass.St.1974, c. 527.

The 1974 amendment, with its clarifying language, was enacted approximately one year after the United States publicly announced that it intended to close the South Boston Naval Annex. Sixteen months thereafter, in November of 1975, the United States did cease to use Parcel 2 for Naval purposes and eventually sold the property to the Commonwealth as "surplus" land pursuant to 40 U.S.C. § 484 (1970). Plaintiff, Government Land Bank, a Commonwealth instrumentality created by the Massachusetts legislature, purchased Parcels 1 and 2, with the exception of 2.18 acres and certain easements, for $4,290,000 and immediately reconveyed its interest in the property to co-plaintiff, Economic Development Corporation, another Commonwealth instrumentality, created by the Massachusetts legislature, to spur economic development in Boston.

It was at this time that the immediate dispute arose. Plaintiffs asserted that as successors of the Commonwealth's reversionary interest they were not obligated to purchase Parcel 2, but rather were entitled to it at no cost pursuant to the reverter clause contained in the 1941 grant. Defendant countered that the Commonwealth had lost its right of reverter by failing to file in accordance with the 1956 Limiting Act, and that the only method whereby plaintiffs could acquire fee simple title to Parcel 2 would be to purchase it at fair market value. In the sales contract the parties agreed that Parcel 2 was worth approximately $1,587,300, which sum was taken from the full purchase price of Parcels 1 and 2 and placed in an escrow account pending the result of litigation to be brought by the Commonwealth to deter-

mine if it could bring suit, in spite of, or under, the Limiting Act to enforce its reversionary interest and, hopefully, to ultimately determine ownership.

Suit was filed by the Commonwealth in the United States Court of Claims in 1978 at about the same time it filed suit under the Quiet Title Act, 28 U.S.C. § 2409a in the United States District Court for the District of Massachusetts. Proceedings in this court were stayed pending outcome of the quiet title litigation. The district court in *Economic Development and Industrial Corp. v. United States*, 546 F.Supp. 1204 (D.Mass.1982), *rev'd*, 720 F.2d 1 (1st Cir. 1983), ruled that the Limiting Act originally applied to the Commonwealth but that the retroactive exclusion of the Commonwealth per the 1968 and 1974 amendments validly removed it from the scheme of the Act leaving plaintiffs with a valid right to seek to enforce its reversionary interest. On appeal, the United States Court of Appeals for the First Circuit reversed and remanded the case with instructions to dismiss because the 12–year statute of limitations on the quiet title action had run and the district court was without jurisdiction to decide the case. *Economic Development and Industrial Corp. v. United States*, 720 F.2d 1 (1st Cir.1983).

Shortly thereafter, the stay of proceedings was vacated in this court, plaintiffs filed an amended complaint and defendant filed a motion to dismiss. Defendant argued that in accordance with *Block v. North Dakota*, 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983), "Congress intended the [Quiet Title Act] to provide the exclusive means by which adverse claimants could challenge the United States' title to real property." *Id.* at 286, 103 S.Ct. at 1819. However, this court, in a bench ruling in 1985 following oral argument on defendant's motion to dismiss, distinguished *Block* on the basis that the Quiet Title Act specifically excepted actions that could be brought under 28 U.S.C. § 1491.[3]

**3.** After the court had ruled on this jurisdictional question, the United States Supreme Court in

*United States v. Mottaz*, — U.S. —, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986) referenced the

*Yaist v. United States*, 228 Ct.Cl. 281, 285–87, 656 F.2d 616, 620–21 (1981); *Bourgeois v. United States*, 212 Ct.Cl. 32, 35–36 n. 1, 545 F.2d 727, 729 n. 1 (1976). The present cross-motions for summary judgment followed.

## DISCUSSION

■ The resolution of the "taking" claim depends upon whether the Limiting Act was ever applicable to the Commonwealth and, if so, whether the Massachusetts legislature could have amended the Limiting Act so as to have revived a cause of action. At the outset, the court finds that the clear, unambiguous language of the Limiting Act, as enacted in 1956 applied to the Commonwealth, as a government and plaintiffs as lawful successors of the Commonwealth's authority, limitations and responsibilities.

■ The court now must address the key issue of whether the Massachusetts legislature could retroactively amend or define the parameters of the Limiting Act so as to restore the authority to the Commonwealth to judicially seek and enforce interests, including possible future interests. Defendant principally relies upon *Stewart v. Keyes*, 295 U.S. 403, 55 S.Ct. 807, 79 L.Ed. 1507 (1935), which held that once a state statute of limitations had run on a case involving real property, and the deed had ripened into unassailable title, to lift the bar would arbitrarily take property from one having a perfect title and subject it to an extinguished claim of another, without due process of law. *Id.* In order to fall within the scope of *Stewart*, defendant argued that the Commonwealth's failure to file notice of its interest in Parcel 2 by January 1, 1964 merged the Commonwealth's future interest (the possibility of reverter) with defendant's fee simple determinable interest so that the United States acquired fee simple title to Parcel 2. However, defendant only cites one authority for the proposition that it acquired fee simple

title to Parcel 2, J. Cribbett, *Principles of Law of Property*, 302 (2d ed. 1975), which, in the court's view, fails to adequately support this rationale. The court is of the opinion that the "legal" effect of the Commonwealth's failure to file notice of its reversionary interest did not vest the United States with clear title to Parcel 2, it simply deprived the Commonwealth of any remedy to enforce its right of reverter. *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 313–14, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945). The express language of the act ("No proceeding ... shall be maintained ..."), operates by barring action on unfiled rights, not by affecting those rights. *See Block v. North Dakota*, 461 U.S. 273, 291, 103 S.Ct. 1811, 1822, 75 L.Ed.2d 840 (1983). In *Block* the Supreme Court held that a claimant retained title to the disputed ownership of a tract of land even if a suit to quiet title is deemed time-barred. *Id.* Similarly, in *United States v. Gammache*, 713 F.2d 588 (10th Cir.1983) the court found that the running of the limitations period in the Quiet Title Act did not affect title to the property at issue. *Id.* at 591–594. In *Goodwin Brothers Leasing, Inc. v. Nousis*, 373 Mass. 169, 366 N.E.2d 38 (1977), a Massachusetts statute similar to the Limiting Act was applied retroactively since it affected remedies rather than rights. *Id.* at 173, 366 N.E.2d 38. In sum, defendant's reliance on *Stewart v. Keyes*, 295 U.S. 403, 55 S.Ct. 807, 79 L.Ed. 1507 (1935), is based upon a determination that defendant acquired "unassailable" or "perfect" title, *Id.* at 416, 55 S.Ct. at 812, but the court has determined that neither the Limiting Act nor the 1968 or 1974 amendments vested the United States with "unassailable" or "perfect" fee simple title to Parcel 2. Therefore, *Stewart* is inapposite to the case at bar, and defendant's argument must fail.

In *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945), the Supreme Court held that:

Claims Court's jurisdiction in a footnote and stated the following in the text: "we cannot conclude that Tucker Act-based suits ... are

clearly precluded by the passage of the Quiet Title Act." *Id.* 106 S.Ct. at 2233 & n. 12.

[W]here lapse of time has not invested a party with title to real or personal property, a state legislature, consistent with the Fourteenth Amendment, may repeal or extend a statute of limitations, even after right of action is barred thereby, restore to the plaintiff his remedy, and divest the defendant of the statutory bar.

*Chase Securities*, 325 U.S. at 311–12, 65 S.Ct. at 1141.

Accordingly, this court is of the opinion that the Commonwealth's legislature may amend a statute of limitations, such as the Limiting Act at issue here, so long as no party to a proceeding affected thereby has, in the interim, become vested with fee simple title. Since defendant did not acquire fee simple title in this case, both the 1968 and 1974 amendments should be considered valid for purposes of this proceeding.

*Stewart* is also distinguishable because it concerned an innocent third party who had purchased land for value and a retroactive change in the law would have had a harsh and oppressive effect on the bona fide purchaser. The Court of Claims has stated in the context of a challenge to a retroactive regulation that:

> [I]t becomes necessary to consider whether, under all the circumstances, the "retroactive application [of the regulation] is so harsh and oppressive as to transgress the constitutional limitation [imposed by the Fifth Amendment]." *Welch v. Henry*, 305 U.S. 134, 147 [59 S.Ct. 121, 126, 83 L.Ed. 87] (1938). Retroactive application of a regulation will not be declared unconstitutional unless after a balancing of the considerations on both sides it is determined that the regulation is unreasonable.

*Summit Nursing Home, Inc. v. United States*, 215 Ct.Cl. 581, 594, 572 F.2d 737, 743 (1978); *see also Hospital Data Center v. United States*, 225 Ct.Cl. 158, 163, 634 F.2d 541, 544 (1980). The Supreme Court recently held that the "harsh and oppressive" standard for retroactive legislation "does not differ from the prohibition against arbitrary and irrational legislation...." *Pension Benefit Guaranty*

*Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984). In *Adams Nursing Home of Williamstown, Inc. v. Mathews*, 548 F.2d 1077 (1st Cir. 1977), the court stated that in "any retroactivity challenge, a central question is how the challenger's conduct, or the conduct of others in his class, would have differed if the law in issue had applied from the start." *Id.* at 1081. It may have been with an excess of caution, but the United States took no action with respect to Parcel 2 in reliance upon the bar of the 1956 Limiting Act. In fact, the Department of the Navy's disposal report, dated August 31, 1973, informed Congress that Parcel 2 would revert to the Commonwealth pursuant to the original 1941 agreement between Massachusetts and the United States. On January 28, 1974, the House Armed Services Committee approved the reversion. Soon thereafter, the Senate Armed Services Committee likewise approved. It was not until after the 1978 amendment to the Limiting Act and Congress' approval of reversion of Parcel 2 to the Commonwealth that defendant challenged the Commonwealth's right to enforce its reversionary interest. It is clear to the court that irrespective of the validity or invalidity of either of the amendments to the Limiting Act, defendant's decision to cease using the property for naval purposes would not have "differed if the law in issue had applied from the start." *See id.*

The court cannot imagine any special hardships or oppressive effects that would result from retrospectively lifting the bar of the Limiting Act. Plaintiffs have pointed out to the court language from *Chase Securities* that eloquently addresses this issue. Justice Holmes was quoted, as follows:

> [T]he prevailing judgment of the profession has revolted at the attempt to place immunities which exist only by reason of some slight technical defect on absolutely the same footing as those which stand on fundamental grounds.... [C]onstitutional rules, like those of the common law, end in a penumbra where the Legislature has a certain freedom in fixing the

line.... [M]ultitudes of cases have recognized the power of the Legislature to call a liability into being where there was none before, if the circumstances were such as to appeal with some strength to the prevailing views of justice, and if the obstacle in the way of the creation seems small.

*Chase Securities*, 325 U.S. at 315, 65 S.Ct. at 1142.

Especially where equity and justice are considerations, the Commonwealth's retroactive amendments cannot be deemed to have denied defendant due process of law. Moreover, the amendments were not harsh or oppressive because the United States took no action in reliance upon the bar of the Limiting Act, there were no third parties affected by the 1968 and 1974 amendments, and the amendments did no more than restore to the Commonwealth its right, in this instance, to enforce its reversionary interest, which became significant when the United States ceased using the property for naval purposes. Thus, the amendments to the Limiting Act did not deprive the defendant of property without due process of law.[4]

 Defendant also requested this court to collaterally estop plaintiffs in this action because statements of the Court of Appeals for the First Circuit addressed issues raised by plaintiffs in their brief and oral argument. However, plaintiffs' taking claim could not have been "actually litigated" because the Court of Appeals for the First Circuit concluded that the courts were without jurisdiction to consider the merits of plaintiffs' quiet title claim. *Economic Development and Industrial Corp. v. United States*, 720 F.2d at 4. This court also held in 1985 that any statements in the opinion regarding the merits of the plaintiffs' case in the First Circuit were not binding on the Claims Court because they were not "essential to the judgment" of the determination that the district court was without jurisdiction. We note that the Court of Appeals for the Federal Circuit has followed the general rule for "collateral estoppel" or "issue preclusion." *Jackson Jordan, Inc. v. Plasser American Corp.*, 747 F.2d 1567, 1575–76 (Fed.Cir. 1984). In accordance with that rule, there is no issue preclusion when the finding relied on is not essential, *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700 (Fed.Cir. 1983), or was not litigated, *The Young Engineers v. USITC*, 721 F.2d 1305, 1314 (Fed.Cir.1983), which is the case here. Accordingly, even if this court wanted to collaterally estop plaintiffs it could not do so.

## CONCLUSION

Plaintiffs' motion for summary judgment is granted, defendant's motion for summary judgment is denied. Based upon the events and the law as set forth above, the court is of the opinion that the amendments to the 1956 Limiting Act effectively, legally, and constitutionally removed the Commonwealth from the coverage of the Limiting Act retroactively to 1956. When the United States ceased using Parcel 2 for naval purposes, the property became subject to reversion to the Commonwealth. In granting plaintiffs' motion for summary judgment, the $1,587,300 presently held in escrow by defendant is to be returned to plaintiffs under the terms of the escrow agreement. The clerk is directed to enter judgment for plaintiffs. No costs.

---

4. Even if a similar deprivation might be unconstitutional if applied to a natural person, the 1968 amendment may be applied to the interest of the United States because it is not entitled to the protection of the Fourteenth Amendment. *United States v. City of Jackson*, 318 F.2d 1, 8 (5th Cir.1963); *United States v. Madison County Board of Education*, 219 F.Supp. 60, 61 (N.D. Ala.1963), *aff'd*, 326 F.2d 237 (5th Cir.1964), *cert. denied*, 379 U.S. 929, 85 S.Ct. 324, 13 L.Ed.2d 341 (1964); *United States v. Nebo Oil Co.*, 90 F.Supp. 73, 95–97 (W.D.La.1950), *aff'd*, 190 F.2d 1003 (5th Cir.1951).