James W. LEE;  Ralph A. Eklund;
Cora Carr;  Plaintiffs-Appellants,

v.

UNITED STATES of America;  Secretary
of the Interior;  Director, Bureau of
Land   Management;   Eklutna,   Inc.;
Cook  Inlet  Region,  Inc.,  Defendants-
Appellees.

No. 86–3651.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 6, 1987.

Decided Feb. 9, 1987.

As Amended April 17, 1987.

Steven P. Oliver, Anchorage, Alaska, for plaintiffs-appellants.

David P. Wolf and Diane Smith, Anchorage, Alaska, and Edward J. Shawaker, Washington, D.C., for defendants-appellees.

Before EUGENE A. WRIGHT, JEROME FARRIS and ROBERT R. BEEZER, Circuit Judges.

FARRIS, Circuit Judge:

Lee, Eklund, and Carr assert a variety of claims against the United States and two Alaska Native corporations. All of their claims are based on the contention that in 1979 the Secretary of Interior conveyed lands that rightfully belonged to them to the Native corporations. On a motion for summary judgment, the district court dismissed their claims against the United States, and all but one of their claims against the Native corporations, for lack of jurisdiction. It dismissed their remaining claim against the Native corporations for failure to state a claim. We affirm.

**FACTS**

In 1950, the Federal Power Commission, acting under the Federal Power Act, set aside certain lands in the Eagle River Valley, near Anchorage, Alaska, as a possible site for future power projects. In 1952, at the request of the Bureau of Land Management, the Power Commission determined that the lands would not be injured for purposes of power development by location or entry on the lands under the public land laws. Following that "no injury" determination, the Secretary of Interior could have declared the lands open for homesteading and other entry, but did not.

In 1957 Lee, Eklund, and Carr located on lands in the Eagle River Valley that included some of the lands classified under the Power Act, with the expectation of taking title under the homestead laws.[1] The Bureau of Land Management had told them that they could stake homestead claims in the Valley. The Power Commission, however, had advised them that the classified lands would be unavailable for homesteading until the Bureau of Land Management formally restored the lands to the public domain. At the time, the region had not been surveyed, and the boundaries of the classified lands were not precisely defined.

In 1959, Lee, Eklund, and Carr, sent a letter to the Secretary inquiring as to why, even though the Power Commission had determined that the classified lands could be made available to homesteaders, the Bureau of Land Management had not restored the lands to the public domain. In his letter of response, the Secretary told them that specific determinations regarding the fate of the classified lands would have to await the completion of an engineering survey, and stressed that the classified lands were not open to entry. He also said that he did not intend to revoke the powersite classification, and that, even if he did do so, selection rights to the classified lands might be given to other groups.

In 1961, the Bureau of Land Management recorded its survey of the region and issued final decisions rejecting the home-

---

1. The homestead laws were repealed in 1976 by Pub.L. 94–579, 90 Stat. 2789.

stead applications of Lee, Eklund, and Carr insofar as the applications conflicted with the powersite classification. Lee, Eklund, and Carr continued to argue with the Bureau of Land Management concerning the extent of their homestead holdings until 1964, when they received patents to all of the lands that they had claimed outside of the powersite classification.

The United States contends that the patenting of the unclassified lands to Lee, Eklund, and Carr in 1964 constituted a compromise in which disputed issues of proof concerning the unclassified lands were resolved in their favor in exchange for their agreement to quit asserting claims to the classified lands. Accordingly, the United States urges that Lee, Eklund, and Carr should now be estopped from claiming title to the classified lands. Lee, Eklund, and Carr argue that there is no evidence in the record to indicate that their receipt of patents to the unclassified lands in 1964 represented a compromise.

In 1971, Congress passed the Alaska Native Claims Settlement Act, 43 U.S.C. §§ 1601–1641 (1982). In 1979, pursuant to the Settlement Act, the formerly classified lands were patented to two Alaska Native corporations, Eklutna, Inc. and Cook Inlet Region, Inc. Lee, Eklund, and Carr subsequently filed the present actions against the United States and the Native corporations.

Lee, Eklund, and Carr argue that the disputed lands were effectively restored to the public domain as a result of the Power Commission's "no injury" determination in 1952. Consequently, they contend that they began acquiring equitable title to the lands under the homestead laws when they entered on and began cultivating the lands in 1957. Alternatively, they argue that section 24 of the Power Act required the Secretary to declare the lands open to homestead entry following the Power Commission's "no injury" determination, and that therefore we should now recognize their claims to the lands under the homestead laws in order to put them in the position that they would have occupied if the Secretary had complied with the law.

Lee, Eklund, and Carr contend in particular that they should have received patents to the lands under section 22(b) of the Settlement Act, which provides that the Secretary shall "promptly issue patents to all persons who have made a lawful entry on the public lands in compliance with the public land laws for the purpose of gaining title to homesteads ..." 43 U.S.C. § 1621(b). They also argue that under section 14(g) of the Settlement Act, 43 U.S.C. § 1613(g), the conveyance of the lands to the two Native corporations in 1979 was subject to their pre-existing homestead rights. They seek a judicial declaration that Eklutna, Inc. and Cook Inlet Region, Inc. are constructive trustees holding the disputed lands in trust for their benefit.

## DISCUSSION

■ We review *de novo* the district court's determinations concerning the extent of its subject matter jurisdiction. *Atkinson v. United States*, 804 F.2d 561, 562 (9th Cir.1986). We may affirm on any ground fairly supported by the record. *City of Las Vegas v. Clark County*, 755 F.2d 697, 701 (9th Cir.1984). We need not consider whether the agreements that Lee, Eklund, and Carr reached with the Bureau of Land Management in 1964 represented a compromise. Regardless of whether their claims should be estopped by the alleged compromise, other factors preclude the claims.

All of the claims are based on the theory that by entering upon and cultivating the disputed lands during the years following the Power Commission's "no injury" determination, Lee, Eklund, and Carr took sufficient steps as *de facto* homesteaders to vest themselves with equitable title to the lands under the homestead laws. Despite this common thread connecting all of the claims, however, we must analyze the claims against the United States separately from the claims against the Native corporations. This is because the Quiet Title Act, 28 U.S.C.A. 2409a (West Supp.1987), applies only to the former claims.

### 1) *Claims Against the United States*

The district court dismissed the claims against the United States for lack of juris-

diction. *Lee v. United States*, 629 F.Supp. 721 (D.Alaska 1985). The court ruled that the claims were actions against the United States "to secure patent[s] for the[ ] disputed homestead entries and to quiet title," and that consequently its jurisdiction to consider the claims derived solely from the Quiet Title Act. *Id.* at 726 (citing *Block v. North Dakota*, 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983)). It then held that it lacked jurisdiction to consider the claims because (1) the United States disclaimed its interest in the lands when it patented them to the Native corporations in 1979, thus divesting the court of jurisdiction under section 2409a(e) of the Act, and (2) even if the disclaimer was for some reason ineffective, the claims would still be barred by the Act's twelve-year statute of limitations. *Id.* at 726–27.

■ The district court correctly ruled that its jurisdiction to consider the claims against the United States was limited to whatever jurisdiction, if any, was conferred upon it by the Quiet Title Act. The Supreme Court has held that "Congress intended the [Quiet Title Act] to provide the exclusive means by which adverse claimants could challenge the United States' title to real property." *Block*, 461 U.S. at 286, 103 S.Ct. at 1819. All of the claims against the United States concern, either directly or indirectly, the United States' title to the disputed lands. Accordingly, the district court's jurisdiction, if any, to hear the claims against the United States derived exclusively from the Quiet Title Act. *See McIntyre v. United States*, 789 F.2d 1408, 1410–11 (9th Cir.1986). Lee, Eklund, and Carr argue that section 702 of the Administrative Procedure Act, 5 U.S.C. § 702 (1982), creates an independent jurisdictional basis for their administrative claims against the United States. We specifically rejected this argument in *McIntyre*. *Id.*²

**2.** We do not hold, and do not read *McIntyre* to hold, that the Quiet Title Act constitutes the exclusive source of jurisdiction for *all* claims against the United States involving the United States' disposition of public lands. Section 2409a(e) of the Act provides that upon the United States' disclaimer of interest, jurisdiction in the district court will continue if the court "has jurisdiction ... on ground[s] other than and independent of the authority conferred by [the

■ The district court possessed no jurisdiction under the Quiet Title Act to hear the claims against the United States. The United States disclaimed all interest in the disputed lands in 1979, when it patented the lands to Eklutna, Inc. and Cook Inlet Region, Inc. The district court found that the disclaimer was "valid and was made in good faith." *Lee*, 629 F.Supp. at 726. The Quiet Title Act expressly provides that "[i]f the United States disclaims all interest in the real property or interest therein adverse to the plaintiff at any time prior to the actual commencement of the trial, which disclaimer is confirmed by order of the court, the jurisdiction of the district court shall cease unless it has jurisdiction of the civil action or suit on ground[s] other than and independent of the authority conferred by [the jurisdictional provision of the Act]." 28 U.S.C.A. § 2409a(e) (West Supp.1987). The only alternative basis for jurisdiction that Lee, Eklund, and Carr have asserted is section 702 of the Administrative Procedure Act, but they are precluded under *McIntyre* from asserting that basis of jurisdiction. *McIntyre*, 789 F.2d at 1410–11.

■ Even if the United States' disclaimer of interest in the disputed lands was ineffective, the claims against the United States would still be barred by the Quiet Title Act's twelve-year statute of limitations. Section 2409a(g) of the Act states that "[a]ny civil action under this section shall be barred unless it is commenced within twelve years of the date upon which it is accrued." 28 U.S.C.A. § 2409a(g) (West Supp.1987). Congress intended for section 2409a(g) to apply retroactively. *See Block*, 461 U.S. at 286 n. 23, 103 S.Ct. at 1819 n. 23. *See also Grosz v. Andrus*, 556 F.2d 972, 975 (9th Cir.1977).

Section 2409a(g) specifically provides that an action "shall be deemed to have

jurisdictional provision of the Act]." 28 U.S.C. 2409a(e) (West Supp.1987). The Administrative Procedure Act provides jurisdiction in cases of administrative wrongdoing. Here, the statute of limitations had run under both the Administrative Procedure Act and Quiet Title Act before Lee, Eklund, and Carr commenced their actions. *See* 28 U.S.C. § 2401 (1982) and 28 U.S.C.A. § 2409a(g) (West Supp.1987).

accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States" to the disputed land. 28 U.S.C.A. § 2409a(g) (West Supp.1987). The claims against the United States accrued as soon as it became clear to Lee, Eklund, and Carr, or should have become clear to them, that the United States intended to reject their homestead claims to the classified lands. We agree with the district court that Lee, Eklund, and Carr "should have realized by 1961 that the United States had a conflicting claim to the portions of their homestead entries within the Power Site Classification[,] [because in] that year the [Bureau of Land Management] issued its survey covering the disputed lands, published notice of the survey in the Federal Register, and issued final decisions rejecting their homestead entries." *Lee,* 629 F.Supp. at 727. At the very latest, Lee, Eklund, and Carr should have known of the United States' conflicting claim to the disputed lands when they submitted their amended homestead applications in 1964. *See id.*

■■■ Lee, Eklund, and Carr argue that the Quiet Title Act's twelve-year statute of limitations should be deemed to have been equitably tolled by their reliance on the Secretary's representations, arguably incorrect,[3] that he was under no duty to remove the powersite classification. Statutes of limitation, however, are "triggered by [claimants'] knowledge of the transaction that constituted the alleged violation, not by their knowledge of the law." *Blanton v. Anzalone,* 760 F.2d 989, 992 (9th Cir.1985). A claim accrues as soon as a potential claimant either is aware or should be aware of the existence of and source of his injury, not when he knows or should know that the injury constitutes a legal wrong. A different rule would require insufficient diligence on the part of potential claimants. *See United States v. Kubrick,* 444 U.S. 111, 123–24, 100 S.Ct. 352, 360, 62 L.Ed.2d 259 (1979). Moreover, because the Quiet Title Act's statute of limitations "is a

jurisdictional requirement, ... '[t]he government may not be equitably barred from asserting [it].'" *McIntyre,* 789 F.2d at 1411 (quoting *Burns v. United States,* 764 F.2d 722, 724 (9th Cir.1985)).

### 2) *Claims Against Eklutna, Inc. and Cook Inlet Region, Inc.*

The district court ruled that even though it lacked jurisdiction to consider the claims against the United States, it did not necessarily lack jurisdiction to consider the claims against the Native corporations. *Lee,* 629 F.Supp. at 727–28. The district court noted that "Congress passed the [Quiet Title Act] as a limited waiver of sovereign immunity for actions to acquire title from the federal government, ... not to insulate private parties who acquire federal lands, such as Eklutna and Cook Inlet Region, from bona fide actions to challenge their title." *Id.* at 727.

■■ The district court correctly stated the general rule. Ordinarily, the fact that a claimant is barred from proceeding against the United States by the jurisdictional provisions of the Quiet Title Act does not prevent the claimant from asserting title to disputed lands against non-federal parties. *See Block,* 461 U.S. at 291, 103 S.Ct. at 1822. *See also Economic Development and Industrial Corp. v. United States,* 720 F.2d 1, 4 (1st Cir.1983); *United States v. Gammache,* 713 F.2d 588, 592 (10th Cir.1983).

■■ This case, however, is an exception to the general rule, because in this case the district court's lack of jurisdiction over the claims against the United States does require that the claims against the Native corporations also be dismissed. All of the relief that Lee, Eklund, and Carr seek requires the presence of the United States as a party. In order to challenge the validity of the Native corporations' patents to the disputed lands, Lee, Eklund, and Carr must be prepared to establish their own entitlement to the lands. "It is not sufficient for one challenging a patent to show that the patentee should not have received the patent; he must also show

---

**3.** *See Reeves v. Andrus,* 465 F.Supp. 1065, 1070 (D.Alaska 1979) (section 24 of the Power Act requires the Secretary "to revoke or modify the

power site classification within a reasonable period" following a "no injury" determination by the Power Commission).

that he ... is entitled to it." *Kale v. United States*, 489 F.2d 449, 454 (9th Cir. 1973), *cert. denied*, 417 U.S. 915, 94 S.Ct. 2617, 41 L.Ed.2d 220 (1974). Lee, Eklund, and Carr can only properly establish their asserted entitlement to the disputed lands in direct proceedings against the United States. *See McIntyre v. United States*, 568 F.Supp. 1, 2–3 (D.Alaska 1983), *aff'd*, 789 F.2d 1408 (9th Cir.1986). The United States is therefore an indispensable party to this action. *See Nichols v. Rysavy*, 809 F.2d 1317, 1331–34 (8th Cir.1987) (United States held to be an indispensable party in a suit challenging the validity of fee patents issued to Native Americans); *Nichols v. Rysavy*, 610 F.Supp. 1245, 1253 (D.S.D.1985) (United States held to be an indispensable party because "the United States . . . issued the fee patent in question, thus setting the entire series of events in motion that resulted in the action."). *See also Nicodemus v. Washington Water Power Co.*, 264 F.2d 614, 615 (9th Cir.1959) (United States held to be an indispensable party in a suit concerning lands held in trust for Native Americans); *Cogo v. Central Council of Tlingit and Haida Indians*, 465 F.Supp. 1286, 1291 (D.Alaska 1979) (same). *See generally* Fed. R.Civ.P. 19(b). In so holding, we recognize that upon different facts the United States might not be an indispensable party.

It follows from the fact that the United States is an indispensable party to this action that the district court's lack of jurisdiction as to the claims against the United States requires the dismissal of the claims against the Native corporations. *See Johnson v. Chilkat Indian Village*, 457 F.Supp. 384, 388 (D.Alaska 1978) (action dismissed because the court did not have jurisdiction over the Chilkat Village Council, and any judgment arrived at in a proceeding to which the Village Council was not a party would be inadequate). *See also Nichols*, 809 F.2d at 1331–34.

## CONCLUSION

Lee's, Eklund's, and Carr's claims against the United States all concern title to real property. The district court's exclusive source of jurisdiction as to such claims is the Quiet Title Act. Under section 2409a(e) of the Quiet Title Act, the United States' disclaimer of interest in the disputed lands in 1979 had the effect of depriving the district court of jurisdiction over the claims. Even if the disclaimer was ineffective, the claims would still be barred by the Quiet Title Act's twelve-year statute of limitations. The United States is an indispensable party to the present actions, because Lee, Eklund, and Carr can only properly establish their entitlement to the lands in direct proceedings against the United States. It therefore follows, as a direct consequence of the district court's lack of jurisdiction over the claims against the United States, that the claims against the two Native corporations must also be dismissed.

We express no opinion regarding the district court's interpretation of sections 14(g) and 22(b) of the Settlement Act, 43 U.S.C. §§ 1613(g) and 1621(b). We also express no opinion as to the district court's ruling that the Settlement Act preempts the common law in the area of disputes brought by third parties against Native corporations concerning lands conveyed under the Settlement Act.

AFFIRMED.