29 F.3d 633
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
E.O. MILTON, Plaintiff-Appellant,
v.
Theodore L. HULLAR; Peter Linz; Norman Matloff; Robert
Cello; Ralph Algazi; Ray Krone; Richard
Walters; Manfred Ruschitzka; Carol
Cartwright; Ken Joy; Larry
Vanderhoff,
Defendants-
Appellees.
 No. 92-15400.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 10, 1993.*
Decided July 11, 1994.
 
 1
 Before: REINHARDT and LEAVY, Circuit Judges, and MERHIGE,** Senior District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 E.O. Milton appeals the district court's grant of summary judgment in favor of the appellees, members of the faculty and administration at the University of California at Davis. Milton filed an action against the appellees in their individual capacities pursuant to 42 U.S.C. Sec. 1983 and the Fourteenth Amendment, alleging that his federal constitutional rights were violated when he was not appointed to the faculty of the new Division of Computer Science at Davis. In his complaint, Milton alleged:
 
 
 4
 [T]he Math Department entered into a verbal agreement with plaintiff Milton by which it would provide plaintiff Milton the appropriate leaves from his teaching responsibilities (in order that plaintiff Milton could retrain himself as a computer scientist), and thereafter a full professional environment as a computer scientist in exchange for plaintiff Milton retraining himself as a computer scientist.
 
 
 5
 Complaint and Demand for Jury Trial, No. CIV-S-90-1306EJG, at 4, para. 16. Milton further alleges that "[t]his agreement was known of, and approved by, the administration of the University of California, Davis." Id. As a result, Milton claims his protected liberty and property interests were violated when he was not appointed to a faculty position at the Division of Computer Science. Milton also claims that there were procedural irregularities during the appointment process that excluded him from the professional environment he was promised.
 
 
 6
 We may affirm the district court "on any grounds fairly supported by the record." Lee v. United States, 809 F.2d 1406, 1408 (9th Cir.1987), cert. denied, 484 U.S. 1041 (1988).
 
 A. Property Interest
 
 7
 "A protected property interest exists if there is a 'legitimate claim of entitlement' to a specific benefit." Goodisman v. Lytle, 724 F.2d 818, 820 (9th Cir.1984) (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)). "A subjective expectancy creates no constitutionally protected interest." Id. In short, there must be more than a "unilateral expectation" in a benefit. Board of Regents v. Roth, 408 U.S. 564, 577 (1972).
 
 
 8
 Milton's claimed property interest stems from an oral agreement he had with Carlos Borges, the Chairman of the Mathematics Department at Davis from 1980 through 1984. Professor Borges describes the agreement:
 
 
 9
 I told Professor Milton of the Department's desire to have in its ranks a competent computer scientist, and Professor Milton told me of his willingness to retrain himself as a computer scientist if the Mathematics Department would support him in this new area. In fact, we explicitly and unequivocally agreed that Professor Milton could have the appropriate leaves from his teaching responsibilities within the Mathematics Department to retrain himself as a computer scientist, and thereafter, he would be provided a full professional environment within which to be a computer scientist.
 
 
 10
 Professor Milton kept his promise with the Department ... and the Mathematics Department's obligation for its half of the bargain was also without question.... What I had intended, and what Professor Milton understood, was that the Mathematics Department would provide Professor Milton from the fall of 1982 a full professional environment for computer science....
 
 
 11
 Unfortunately, while the Mathematics Department was fully prepared to live up to its part of the bargain with Professor Milton, events on the campus at large caused the Mathematics Department to be unable to meet its commitment to Professor Milton. In particular, in 1983, the Division of Computer Science was created ... and the Mathematics Department was substantially stripped of any ability to provide Professor Milton with what he had bargained.
 
 
 12
 Declaration of Carlos Borges in Support of Plaintiff's Opposition to Motion for Summary Judgment, No. CIV-S-90-1306EJG, at 1-3, paras. 2-4 (emphasis added). At most the oral agreement provided Milton with an expected benefit from the Mathematics Department only. Without any evidence that would bind the entire University to the Borges agreement, Milton has no more than a unilateral expectation of a full professional environment in the Division of Computer Science.
 
 
 13
 On appeal, Milton states: "My department chair, Carlos Borges, had express authority to operate Department programs, make commitments to new and existing faculty members ... in mathematics and in the newly certified ... computer science program. " Appellant's Opening Brief at 6 (emphasis added). We find no support for this statement in the record, and Milton cites none. The Department Chair's authority simply does not extend that far. See Appellant's Supplemental Excerpts of Record (describing duties of department chairs as exclusive to their departments). Conclusory allegations like these are insufficient to defeat a motion for summary judgment. First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, (1968); Shane v. Greyhound Lines, Inc., 868 F.2d 1057, 1061 (9th Cir.1989).
 
 
 14
 Milton also contends he had a "bilateral agreement" with the defendants that was the basis of his "expectation that I would be permitted to continue my employment at [Davis] as a computer scientist." Appellant's Opening Brief at 16. He claims to have a "mutual written agreement and approval of the University," id. at 6, to have a professional environment in computer science. Milton presents documents that he contends show a mutual agreement. See Excerpt of Record, tab 7. These documents do not support a mutual agreement; rather, they show an apparently routine request for, and grant of, a sabbatical. Professor Milton's Sabbatical Leave Statement does not even mention the agreement with the Math Department as the reason for his application for sabbatical.[1] Moreover, because Davis has published standards for granting faculty appointments, no oral agreement between Milton and Borges could establish a binding contract guaranteeing Milton a faculty appointment in another department. See Davis v. Oregon State Univ., 591 F.2d 493, 496 (9th Cir.1978).[2]
 
 B. Liberty Interest
 
 15
 Milton has no liberty interest in transferring to the Department of Computer Science or in having Davis follow the proper procedures in creating and staffing the Division. See Roth, 408 U.S. at 572-74 (defining liberty interests).
 
 C. Procedural Due Process
 
 16
 Milton argues that he has a constitutionally protected interest in having Davis follow the proper procedures in creating and staffing the Division of Computer Science. However, "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Roth, 408 U.S. at 569. Because there are no protectable liberty or property interests at stake, there is no due process violation.
 
 
 17
 AFFIRMED.
 
 REINHARDT, Circuit Judge, dissenting:
 
 18
 I dissent. As I read the record, there is a genuine issue of fact regarding whether Milton had a property interest in having a "full professional environment" to teach and research as a computer scientist. According to the Borges affidavit, which we must take as true for summary judgment purposes, Milton had an agreement with the Chairman of the Mathematics Department. Under this agreement, Milton would retrain himself as a computer scientist and thereby give up his previous specialization in functional analysis. In return, Chairman Borges promised that Milton would receive a "full professional environment for computer science." If this promise was binding, it was a sufficient "mutually explicit understanding[ ]" to create a property interest. Perry v. Sindermann, 408 U.S. 593, 601 (1972). On the present record, there is a factual dispute regarding whether the Mathematics Department Chairman had the authority to bind the University by making such a promise. The university regulations are ambiguous on this issue. Because the Computer Science Division was to be created, at least in part, out of the Mathematics Department, and because the Division would be the only arm of the University where Milton could have a "full professional environment for computer science," I believe that there is a genuine issue of material fact whether the Chairman of the Mathematics Department had the authority to bind the University by his promise.
 
 
 19
 I also disagree with my colleagues that the statute of limitations bars Milton's claim. Because the cause of action arose less than two years before the Supreme Court's decision in Wilson v. Garcia, 471 U.S. 261, 279 (1985), the statute of limitations period ended on April 17, 1986, one year after Wilson was filed. See Usher v. Los Angeles, 828 F.2d 556, 561 (9th Cir.1987). However, Milton's pursuit of administrative and state court remedies tolled the statute for almost all of the period leading to the filing of this action. His second administrative grievance (which was filed within the original limitations period on January 16, 1986) tolled the statute at least until January 15, 1989. His state court suit further tolled the statute until September 7, 1990. The present case was filed less than two months later, on August 19, 1990.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 The Honorable Robert R. Merhige, Jr., Senior District Judge for the Eastern District of Virginia, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The request merely states that Milton "plan[s] to spend my sabbatical leave developing my research interests in computer science" and that Milton has "identified several possible areas in which I might like to work," including the relational model of database systems, the interface between holography and optical computation as it relates to digital computing, and operational system independence and parallel processing languages
 
 
 [2]
 In addition to the other problems with this case, the statute of limitations has run on the contract claim. On August 2, 1988, the Committee on Privilege and Tenure found there was no contract with the University in the events surrounding the approval of the sabbatical. Appellees' Supplemental Excerpt of Record, tab 36, Exh. A, at 9. Nothing happened within the next year to toll the statute of limitations on this claim. Milton's action based on section 1983 was not filed until October of 1990. Certainly, any action Milton may have had against the Mathematics Department is time barred