**SOKAOGON CHIPPEWA COMMUNITY,**
**Plaintiff–Appellant,**

v.

**STATE OF WISCONSIN, ONEIDA COUNTY, Max Peterson, Chief, U.S. Forest Service, James Berlin, Forest Supervisor, United States of America, Forest County, Langlade County, and Exxon Corporation, Defendants–Appellees.**

No. 88–2772.

United States Court of Appeals,
Seventh Circuit.

Argued March 31, 1989.

Decided July 24, 1989.

Rehearing and Rehearing En Banc
Denied Sept. 11, 1989.

Earl A. Charlton, Daniel W. Stevens, Milwaukee, Wis., Milton Rosenberg, Madison, Wis., Sokaogon Chippewa Community, plaintiff-appellant.

John D. Niemisto, Asst. Atty. Gen., Wis. Dept. of Justice, Madison, Wis., Fred W. Kawalski, Office of the Corp. Counsel, Antigo, Wis., Lawrence R. Heath, Office of the Corp. Counsel, Rhinelander, Wis., for State of Wisconsin and Oneida County, defendants-appellees.

Louise F. Milkman, Dept. of Justice, Civ. Div., Appellate Section, Washington, D.C., for Fred W. Kawalski, Office of the Corp. Counsel, Antigo, Wis., Lawrence R. Heath, Office of the Corp. Counsel, Rhinelander, Wis., Philip J. Freeburg, Schofield, Wis., for Max Peterson, Chief U.S. Forest Service, defendant-appellee.

John D. Niemisto, Asst. Atty. Gen., Madison, Wis., Fred W. Kawalski, Office of the Corp. Counsel, Antigo, Wis., Lawrence R. Heath, Office of the Corp. Counsel, Rhinelander, Wis., Philip J. Freeburg, Schofield, Wis., for Langlade County, defendant-appellee.

David E. Beckwith, David Lucey, Foley & Lardner, Milwaukee, Wis., for Exxon Corp., defendant-appellee.

William T. Finley, Jr., David F.B. Smith, Pierson, Semmes & Finley, Washington, D.C., for American Land Title Ass'n, amicus curiae.

Before CUMMINGS,* POSNER, and FLAUM, Circuit Judges.

POSNER, Circuit Judge.

The Sokaogon Chippewa Community, an Indian tribe, brought suit against the United States, Exxon Corporation, and other defendants under 28 U.S.C. § 1362 to establish its treaty right to a tract 12 miles square (144 square miles, or 92,600 acres) in northern Wisconsin. The tract is rural, and contains federal and state public lands as well as vacation homes, farms, and other private residences. Copper and zinc were discovered in the tract in 1976, and Exxon, claiming mineral rights, began fencing portions of the tract preparatory to developing the mineral deposits. The fencing interfered with various uses that the Sokaogon were making of the tract, such as fishing, the gathering of wild rice, and the harvesting of porcupines, and in 1986 the tribe filed this suit. The district judge dismissed the complaint against the United States on statute of limitations grounds and dismissed the remaining defendants on the ground that the United States was an indispensable party to the suit against them. There was no pretrial discovery or other development of evidence.

The complaint is founded on two treaties that the United States signed with a group of Chippewa (more accurately, "Ojibwa") tribes in 1842 and 1854 respectively; the Sokaogon either were one of these tribes or are a successor to one or more of them. In the 1842 treaty the Chippewa ceded to the United States a large amount of land, including the tract at issue in this case, in return for various promises and other consideration. See Treaty with the Chippewa of Oct. 4, 1842, 7 Stat. 591. Article II of the treaty reserved to the Chippewa "the right of hunting on the ceded territory, *with the other usual privileges of occupancy,* until required to remove by the President of the United States" (emphasis added). The plan was no doubt to remove the Chippewa tribes west of the Mississippi River, as had been done with the Seminoles and other eastern Indians. Resistance by the Chippewa to this plan resulted in the second treaty involved in this case, Treaty with the Chippewa of Sept. 30, 1854, 10 Stat. 1109, which promised the Chippewa substantial land east as well as west of the Mississippi, including land in Wisconsin. According to the complaint, the promise embraced the tract involved in this case. But, the complaint continues, the U.S. re-

---

* Judge Cummings disqualified himself from consideration of the case after oral argument.

neged on the promise; a series of Chippewa reservations were created but none included the tract. And not only was this a violation of the 1854 treaty, but as a result of the violation the U.S. never satisfied the conditions of the removal clause of the 1842 treaty—and therefore the right of occupancy that the earlier treaty had conferred on the Sokaogon never terminated. Precisely when the U.S. reneged on its promise in the 1854 treaty is not alleged, but the complaint does say that "within a few decades" after that treaty was signed the Sokaogon were "dispossessed" from the tract in question. The complaint further alleges that besides failing to create a reservation embracing that tract the U.S. began granting mineral and other rights to various persons, establishing a forest preserve, etc., all in derogation of the tribe's rights.

No suit was filed until the present suit in 1986. This was too late to sue the U.S. The plaintiff's cause of action against the U.S. must certainly have accrued well before August 13, 1946—the critical date because the Indian Claims Commission Act, 25 U.S.C. § 70 *et seq.* (a statute that expired by its own terms in 1978), expressly created an *exclusive* remedy against the U.S. for tribal claims accruing before that date and established a five-year statute of limitations. See §§ 70a, 70k. The Sokaogon contend, however, that the U.S. should be estopped to plead the statute of limitations because it interfered with the tribe's obtaining adequate legal representation. Indian tribes are not permitted to make contracts that are not approved by the Bureau of Indian Affairs, 25 U.S.C. § 81, including contracts with attorneys, and the Sokaogon contend that the Bureau forced the tribe to hire lawyers who had a conflict of interest because they represented other Chippewa tribes and who failed (for whatever reason) to assert the Sokaogon's claim to the tract in issue.

Whether the U.S. may ever be equitably estopped to plead a defense by the misconduct of its agents remains an open question, see *Heckler v. Community Health Services,* 467 U.S. 51, 60–61, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984); *Lyng v. Payne,* 476 U.S. 926, 935, 106 S.Ct. 2333, 2339–40, 90 L.Ed.2d 921 (1986); *United States v. Medico Industries, Inc.,* 784 F.2d 840, 846 n. 2 (7th Cir.1986), but here as in the cited cases an element essential to stating a claim of equitable estoppel is missing. Here it is the misconduct itself. Cf. *INS v. Hibi,* 414 U.S. 5, 8, 94 S.Ct. 19, 21–22, 38 L.Ed.2d 7 (1973) (per curiam). The complaint alleges that for reasons of efficiency the Bureau of Indian Affairs encouraged the "agglomerating" of all Chippewa claims into a single claim for presentation to the Indian Claims Commission and that the law firm picked by the Bureau to represent the Chippewa unaccountably failed to include the Sokaogon claim. Assuming this to be true, we do not think it states a claim of equitable estoppel. For all that appears, the Bureau's desire to pool the Chippewa's claims was a reasonable and sensible one and any bobble was committed by the law firm—yet there is no allegation that the Bureau was negligent or malicious in picking that firm. And there may have been no bobble; the law firm may have made a correct judgment that the Sokaogon claim was groundless. Maybe the Bureau could have done better, but the complaint does not allege the kind of misconduct—if indeed it alleges misconduct at all—that would justify forfeiting the United States' statute of limitations defense. The statute requiring the Bureau's consent to the making of contracts was in force when the Indian Claims Commission Act with its five-year statute of limitations was passed, and we do not think Congress would have wanted the limitations period undone by so pallid, nebulous, and exiguous a charge of potential conflict of interest as is made in this case. Cf. *INS v. Hibi, supra.* The Sokaogon do not argue that section 81 is unconstitutional whether in general or as applied to the facts here, and there is no constitutional right to representation in civil cases, let alone representation free of potential conflicts of interest. See, e.g., *United States v. White,* 879 F.2d 1509, 1513 (7th Cir.1989).

The Sokaogon have, however, another argument for avoiding the five-year statute

of limitations: insofar as the 1842 treaty can be understood to grant not a right in fee simple but rather, as the wording implies, a right to *use* the land for limited purposes like hunting, fishing, gathering, religious ceremonies, burials, and other nomadic, intermittent, nonhabitational, nonpossessory Indian uses (cf. Rose, *Possession as the Origin of Property*, 52 U.Chi. L.Rev. 73, 85–88 (1985)), *that* right was not infringed until Exxon began fencing the land in 1976. And such infringement, occurring as it did after 1946, is not within the scope of the Indian Claims Commission Act. Here the Sokaogon rely on the Quiet Title Act, 28 U.S.C. § 2409a, which allows the naming of the U.S. as a defendant to a dispute over real property in which the U.S. claims an interest, and sets a 12–year statute of limitations that runs from the time the plaintiff or its predecessor knew of the claim.

The 12–year statute of limitations would be no bar to the suit against the U.S., we may assume, if the tribe did not discover until it saw Exxon's fence going up that the U.S. had asserted an interest in the tract inconsistent with the tribe's occupancy rights and had made a grant of that interest or a part thereof. The problem is that elsewhere in the complaint the tribe alleges that within several decades following the 1854 treaty the tribe (or its predecessor) had been dispossessed by the defendants. Long before Exxon began building its fence, moreover, vacation homes and other private residential buildings had sprung up on the tract, providing notice to the tribe that the U.S. (to which, remember, the Chippewa had ceded the land in the first place) may at some time have infringed the Indians' right of occupancy which had been reserved in the treaty. Of course, limited use of the land by farmers and vacationers would not necessarily have infringed a right of limited and intermittent occupancy, but it is the plaintiff itself that claims that this limited use dispossessed the tribe.

So the suit against the U.S. was properly dismissed. But we do not agree with the district judge that this dismissal required abatement of the suit against Exxon and the other nonfederal defendants. Rule 19(b) of the Federal Rules of Civil Procedure provides that if a necessary party (a party that should be joined if feasible, Fed.R.Civ.P. 19(a)) cannot be joined—the situation with the U.S. in this case—"the court shall determine whether in equity and good conscience the action should proceed" against the remaining defendants. Whether this vague test is satisfied depends on a weighing of the parties' (including the absent party's) interests, which are listed in Rule 19(b), elaborated in *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109–11, 88 S.Ct. 733, 737–39, 19 L.Ed.2d 936 (1968), and analyzed in relation to Indian claims in *Wichita & Affiliated Tribes v. Hodel*, 788 F.2d 765, 774–78 (D.C.Cir.1986). Does the plaintiff have another route by which to pursue his claim? If not, that is a mark against deeming the absent defendant indispensable. Will one or more of the remaining defendants be subject to multiple liability or other serious inconvenience? If so, that is a mark in favor of deeming the absent defendant indispensable. Is there a serious danger that the absent party will be harmed by the judgment rendered in his absence? That is another mark in favor of deeming him indispensable. Finally, what disposition will further the public interest in consistent and expeditious resolution of legal controversies?

There is virtually no case law on the standard of appellate review of a Rule 19(b) determination. Most of the cases, including not only *Provident Tradesmens* but also a number of cases in this circuit, see, e.g., *Tillman v. City of Milwaukee*, 715 F.2d 354 (7th Cir.1983); *Bonnet v. Trustees of Schools*, 563 F.2d 831, 833 (7th Cir.1977); *Tankersley v. Albright*, 514 F.2d 956, 965–68 (7th Cir.1975); *Le Beau v. Libbey–Owens–Ford Co.*, 484 F.2d 798 (7th Cir.1973), implicitly treat appellate review as plenary. See also *Nichols v. Rysavy*, 809 F.2d 1317, 1331–34 (8th Cir.1987). But none of these cases actually discusses the standard of review, and so far as appears in none of them was the standard of review made an issue. The Tenth Circuit has held

that "since evaluation of indispensability 'depends to a large degree on the careful exercise of discretion by the district court,' we will only reverse a district court's determination for abuse of that discretion." *Navajo Tribe v. New Mexico*, 809 F.2d 1455, 1471 (10th Cir.1987) (citation omitted). There is much to be said for the Tenth Circuit's position. The looseness and fact-specific nature of the inquiry that Rule 19(b) requires argue for a deferential standard of appellate review and there is a strong trend in this circuit toward such standards for case-specific issues. See, e.g., *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928 (7th Cir.1989) (en banc); *Foy v. First National Bank*, 868 F.2d 251, 254 (7th Cir.1989); *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 388–91 (7th Cir.1984). On the other side it can be argued that the finding of indispensability is so fell in its consequences, requiring as it does the dismissal of the entire suit, that the appellant should receive a broader scope of review.

We need not try to resolve the question of the proper standard of appellate review. Under any standard, the district court's determination that the U.S. is an indispensable party must be reversed, because none of the considerations listed in the rule and elaborated in *Provident Tradesmens* or other cases provides any support for the district court's determination. The plaintiff has no other route for establishing its rights in the tract. The defendants are not at risk of multiple liability; on the contrary, if they lose this suit and are forced to give back their mineral and other land rights to the tribe, they may have a claim over against the U.S. for breach of a warranty of good title. (We do not say they do; we express no view on the question; we do not even know whether the U.S. was their immediate grantor.) As for the U.S., it has declined to take any position on its indispensability, so it must not fear the consequences of a judgment in this suit. Finally, the public interest favors where possible the resolution of legal questions on the merits. It also favors repose, but this aspect of the public interest is secured by statutes of limitations.

If the Sokaogon have a good claim to this land, they ought not be barred from prosecuting it by their inability to sue an entity perhaps only remotely involved in their dispute with Exxon and the other occupiers. To exaggerate slightly (because the U.S. appears to be in occupation of some of the land, although the extent of that occupation is entirely unclear on the skimpy record of this case), it is as if every time someone claimed that someone else was encroaching on his property he would have to sue not only the alleged encroacher (here Exxon) but also the alleged encroacher's predecessors in title right back to King James or Lord Baltimore (here the U.S.). So far as can be determined from an utterly inadequate record, the relationship of the U.S. to the Indians' controversy with Exxon and the other occupiers of the land in derogation of the Indians' alleged occupancy rights is that of a predecessor in title (to Exxon), no more.

The nature of the Rule 19(b) inquiry—a weighing of intangibles—limits the force of precedent and casts doubt on generalizations such as "that, in a suit by an Indian tribe to protect its interest in tribal lands, regardless of whether the United States is a necessary party under Rule 19(a), it is *not* an indispensable party in whose absence litigation cannot proceed under Rule 19(b)," *Puyallup Indian Tribe v. Port of Tacoma*, 717 F.2d 1251, 1254–55 (9th Cir. 1983) (emphasis in original)—consistent though that particular generalization is with our own analysis. In a series of cases decided within the space of a month in 1987, three circuits held that where an Indian tribe is challenging the lawfulness of a deed issued by the United States, the U.S. is an indispensable party even if the only relief sought is against the present owner. See *Nichols v. Rysavy, supra,* 809 F.2d at 1331–34; *Lee v. United States*, 809 F.2d 1406, 1410–11 (9th Cir.1987); *Navajo Tribe v. New Mexico, supra,* 809 F.2d at 1471–73. But to state the holdings of these cases so broadly is again to overgeneralize. In two of the cases the U.S. was clearly exposed to potential liability to its grantee; in the

third, property rights claimed by the U.S. were in jeopardy. In *Nichols,* the plaintiffs were claiming that the U.S. had made illegal grants of land that the U.S. had agreed to hold in trust for the Indians; and if the plaintiffs won their case—which sought to set aside the grants—not only would the U.S. be potentially liable to the grantees but it would be revested with a trustee's responsibilities. *Lee* was similar, while in *Navajo Tribe* the U.S. claimed to own the land that the Navajos were seeking to recover.

In none of the cases is there any indication that the U.S. had disclaimed indispensability. In the present case, in contrast, the U.S. has expressed no fear of liability or other burdens as a consequence of a judgment in favor of the plaintiffs. Exxon and the other defendants must trace their rights in the tract in question back to the U.S. because we know this is land that the Chippewa ceded to the United States, but the record contains no information on the chain of title and it is at least conceivable that Exxon, the principal defendant, is an interloper of some sort. Cf. *Cayuga Indian Nation v. Cuomo,* 667 F.Supp. 938, 947 (N.D.N.Y.1987). The complaint does allege that the U.S. made grants in derogation of the plaintiff's treaty rights, but when and to whom is nowhere disclosed. These are matters to be straightened out in the district court on remand.

We understand the anxieties of the American Land Title Association (which has filed a brief amicus curiae in support of the defendants) about a suit that could unsettle titles throughout a large tract of land. But on the other hand many legal wrongs were done to the Indians, and the Supreme Court recently held that an Indian tribe could bring a suit to recover land conveyed to the State of New York almost two centuries ago. See *County of Oneida v. Oneida Indian Nation,* 470 U.S. 226, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985). We are not suggesting that *County of Oneida* is authority in this case or holding that Exxon or any other defendant violated the rights of the Sokaogon. We hold only that, on this very sparse record, the district judge erred in dismissing the complaint against these defendants on the ground that the United States is an indispensable party.

AFFIRMED IN PART, REVERSED IN PART.