**SPARTECH CORPORATION,**
Plaintiff–Appellee,
Cross–Appellant,

v.

**Ronald B. OPPER and Lee E. Opper,**
Defendants–Appellants,
Cross–Appellees.

**Nos. 88–2453, 88–2556.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 20, 1989.

Decided Nov. 29, 1989.

Rehearing and Rehearing En Banc
Denied Jan. 4, 1990.

James B. Gottlieb, Stewart M. Weltman, Deborah Schmitt Bussert, Anthony C. Valiulis, Much, Shelist, Freed, Denenberg, Ament & Eiger, Chicago, Ill., for plaintiff-appellee, cross-appellant.

David C. Roston, William P. Caputo, Sherwin J. Stone, Altheimer & Gray, David A. Novoselsky, Novoselsky & Associates, Chicago, Ill., for defendants-appellants, cross-appellees.

Before WOOD, Jr., POSNER, and COFFEY, Circuit Judges.

POSNER, Circuit Judge.

This is a tangled commercial dispute, rich with issues. The defendants are the Oppers, the former owners of Equipment Financing Ltd., which, when they owned it, was called Financial Underwriters. Equipment (as we shall call the firm under both its old and its new ownership) was in the business of leasing medical equipment. It would borrow money to buy the equipment, would lease the equipment, and would assign the lessee's rental payments to the lender who had financed Equipment's purchase of it. Built into each rental payment was a profit for Equipment. The equipment loan reflected this profit and thus

exceeded the purchase price of the equipment. The difference was income to Equipment, realized when the loan was made, but for federal and state income tax purposes the income did not accrue until the rental payment was made. With every such deferral of income, a deferred tax liability arose.

The Oppers wanted to sell Equipment, not in order to get out of the equipment-leasing business, but to raise cash; as a matter of fact, they wanted to go back into the business immediately under their old name. They sought a buyer who would have net operating loss carryforwards sufficient to offset Equipment's deferred tax liability. They knew that Spartech, the plaintiff in this case, was such a company, and they approached it with a proposal that it buy Equipment. A deal was struck. A wholly owned subsidiary of Spartech—Spartan Fabrication, Inc.—would buy the Oppers' stock in Equipment, then merge into Equipment and disappear, leaving Spartech as Equipment's only shareholder. The Oppers would form a new corporation, Apelco, Inc., to administer Equipment's leases. No new leases would be made, for remember that the Oppers were planning to reenter the business; and from Spartech's standpoint this was a financial rather than an operating transaction—it had no desire to be in the equipment-financing business. The agreement further provided that Apelco would pay all of Equipment's expenses and would divide any income that remained between Spartech and the Oppers according to a prescribed formula. Equipment would retain no cash, and would need none since it was being liquidated. The deal was duly consummated.

The agreement had not mentioned taxes, because the parties had expected that Spartech's net operating loss carryforwards would completely offset Equipment's deferred tax liability. They did not realize that Spartech could use its loss carryforwards to offset state income tax only in a state in which it had incurred losses, and it had incurred none in Illinois—the state to which Equipment, an Illinois corporation, owed deferred income taxes. There was also a factual misunderstanding concerning the amount of Equipment's deferred tax liability and hence the amount of net operating loss carryforwards that Spartech would have to use up in order to escape having to pay any taxes on Equipment's income. Although Spartech took the position that it had no liability for Equipment's debts, Equipment being a separate corporation, Spartech's practice was to pay its subsidiaries' income taxes and charge the expense back to each subsidiary. Pursuant to this practice, it paid Illinois $50,000 on account of Equipment's state income tax liability. The state has been dunning Spartech for the rest. Equipment has no cash with which to pay any taxes.

Spartech brought this suit against the Oppers and Apelco, charging federal securities violations and adding pendent counts based on Illinois' common law of fraud and fiduciary duty. As an alternative basis for federal jurisdiction, Spartech cited diversity of citizenship, Spartech being a corporate citizen of Delaware and Missouri and all the defendants citizens of Illinois. The district judge dismissed the federal claims but did not address the issue of pendent jurisdiction because he believed the case was securely within the diversity jurisdiction.

A bench trial resulted in judgment for Spartech on its claim for breach of fiduciary duty. The judge found that the Oppers, by assuring Spartech that they would see to it that all of Equipment's expenses were paid before its income was split with Spartech, had implicitly promised Spartech that they would make sure Equipment paid any taxes it might owe. The record does not reveal why the plaintiff cast this claim as one for breach of fiduciary duty rather than breach of contract, but conceivably there were statute of frauds or statute of limitations problems or other technical defenses to contract liability that Spartech was trying to get around. Essentially it is a simple breach of contract: the Oppers made a promise to Spartech, supported by consideration, and they broke it. But the management contract gave the Oppers such complete control over Equipment as to make them fiduciaries of the sharehold-

er, Spartech, and as such they incurred liability that is not cabined by the technical rules of contract law.

The judge exonerated the defendants of the charge of fraud. And he dismissed Apelco from the case because he had just ordered the Oppers to pay Spartech the share of the money Apelco had distributed to the Oppers which should have been used to pay Equipment's taxes. The judgment is unusual in including a further order that Spartech pay the State of Illinois the taxes that Equipment owes it, even though the state has never been a party to the case. Spartech does not question the order, so neither shall we.

The Oppers appeal on a variety of grounds; Spartech cross-appeals seeking reinstatement of the fraud count, which might entitle it to additional damages. For the first time on appeal—but of course that is *not* too late—the Oppers argue that the district court had no jurisdiction; and the jurisdictional issues are the principal issues raised by the appeal.

With regard to pendent jurisdiction as a basis for the district court's jurisdiction, the Oppers contend erroneously both that the federal securities claims in the complaint were insubstantial (which if true would bar the exercise of pendent jurisdiction) and that whenever all federal claims, insubstantial or not, are dismissed before trial, the district judge must relinquish pendent jurisdiction.

■ Ever since the Supreme Court rejected the sale of business doctrine in *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985), the buyer of all the stock of a corporation has been able to charge his seller with fraud under Rule 10b–5 of the Securities and Exchange Commission; unless the charge is frivolous, it will support pendent jurisdiction of related state-law claims. It was not frivolous in this case. It turned out to be barred by the statute of limitations, but the plaintiff had a colorable argument for tolling the statute because of fraudulent concealment by the defendants.

■ While it is true that, normally, pendent claims are dismissed when the federal claims fall out before trial, that is not an invariable rule, see, e.g., *Rosado v. Wyman*, 397 U.S. 397, 402–05, 90 S.Ct. 1207, 1212–14, 25 L.Ed.2d 442 (1970); *Graf v. Elgin, Joliet & Eastern Ry.*, 790 F.2d 1341, 1347–48 (7th Cir.1986); *United States v. Zima*, 766 F.2d 1153, 1158–59 (7th Cir. 1985), and without the benefit of the district judge's views we hesitate to say that the present case cannot possibly be fit into any of the exceptions. By the same token we cannot agree with Spartech that the judge would have been *required* to retain jurisdiction over the state law claims as a matter of law. The decision whether to retain or relinquish pendent jurisdiction is one in the first instance for the district judge's discretion, and the district judge exercised no discretion because he thought the case snugly within the diversity jurisdiction and the issue whether to exercise pendent jurisdiction therefore moot. There may well be cases where relinquishing jurisdiction of pendent claims would be an abuse of discretion, but this is not one.

So if the only possible basis of federal jurisdiction here were pendent jurisdiction, a remand would be necessary. But we agree with the district judge that the case is within the diversity jurisdiction, notwithstanding the Oppers' forceful argument that Equipment, not Spartech, is the real plaintiff—and Equipment, like the Oppers themselves and Apelco, is a citizen of Illinois. Spartan, the immediate acquirer of Equipment, was also a citizen of Illinois, but like a subatomic particle generated in an atom smasher its life was brief, and it disappeared before the suit was filed.

The Oppers make two arguments against the existence of diversity jurisdiction. The first is that Spartech is not entitled to pierce the corporate veil and step into the shoes of Equipment, for it is Equipment rather than Spartech that is liable for the taxes that are in dispute. The second is that, at the very least, Equipment is an indispensable party plaintiff.

■ If Spartech were a merely nominal party, it would be ignored in deciding whether there was diversity of citizenship. The citizenship of the real parties in inter-

est is what counts. *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980); *Adden v. Middlebrooks*, 688 F.2d 1147, 1150 (7th Cir.1982). But Spartech is more than that. It has already shelled out $50,000 in taxes to Illinois—taxes that, the district judge found (not clearly erroneously), the Oppers had agreed to make sure Equipment would pay through the Oppers' creature, Apelco, which controlled Equipment. This is a good place at which to take out of order the Oppers' argument that the district judge should not have pierced Apelco's corporate veil and made the Oppers pay its debt. That is not what the judge did. The *Oppers* had promised Spartech that they would oversee the proper distribution of Equipment's receipts; it was *their* undertaking, and is the basis for Spartech's claim of breach of fiduciary duty. Apelco was merely the Oppers' agent. It is a common misunderstanding that the principle of limited liability protects the shareholders and officers of a corporation for liability for their own wrongful acts. It does not. *Refrigeration Sales Co. v. Mitchell–Jackson, Inc.*, 770 F.2d 98, 103 (7th Cir.1985). It protects them from *derivative* liability, that is, from being called to account for the wrongs of the corporation. The liability of the Oppers is primary.

The Oppers argue that, in paying taxes due from Equipment, Spartech was a mere volunteer, an intermeddler, using its control over Equipment to confer the appearance of a financial stake on a diverse party. Even if the premise that Spartech controls Equipment were correct (which it is not—Apelco controls Equipment, and the Oppers control Apelco), the Oppers' characterization of Spartech's conducts and motives in this case would not be realistic, because the State of Illinois is looking to Spartech to make good on Equipment's tax liability. Granted, if it were demonstrable that Spartech had no tax liability and Illinois' action in dunning it for Equipment's unpaid taxes was merely some mindless bureaucratic spasm, an inference might arise that Spartech really was an intermeddler, stirring up a phony tax dispute with the state in order to litigate its subsidiary's

dispute in federal rather than in state court. But in truth Illinois' claim against Spartech is supported by a number of plausible theories, only one of which need be discussed to show that Spartech has a real stake in the tax dispute. The distributions of Equipment's receipts to Spartech and the Oppers left Equipment cashless, unable to pay the claims of its creditor the State of Illinois and therefore insolvent. Those distributions could, therefore, possibly be regarded as fraudulent conveyances, see Ill. Rev.Stat. ch. 59, ¶ 4, and in turn support a direct action against their recipient, Spartech. See, e.g., *Blankenship v. Demmler Mfg. Co.*, 89 Ill.App.3d 569, 572–73, 44 Ill. Dec. 787, 789, 411 N.E.2d 1153, 1155 (1980); *Landers Frary & Clark v. Vischer Products Co.*, 201 F.2d 319, 324 (7th Cir.1953). It is not important whether this is a correct theory; it is enough that it makes the state's claim against Spartech colorable and Spartech's injury at the hand of the Oppers therefore real. Even if Spartech ended up owing less to the state than the state claims—even if it ends up owing nothing—it would still have incurred legal expenses in defending itself, and the cause of those expenses would be the Oppers' violation of their promise to take care of *all* expenses of Equipment.

The Oppers properly do not argue what might seem the obvious point, that it makes no practical difference to Spartech whether Apelco deducted taxes before paying Equipment's net income over to Spartech, or made no deduction and left Spartech to pay the taxes out of a larger receipt from Apelco—a receipt of gross rather than net income. That would indeed make no difference but is not what happened. Under the parties' deal, certain income from Equipment—what the parties call "residual income," representing income to Equipment in cases where its lessee decided to buy the equipment rather than return it at the end of the lease—was to be split between Spartech and the Oppers. Money that if Spartech's interpretation of the contract is correct should have been used to pay taxes was instead divided between the Oppers and Spartech; money that Apelco

should have used to pay taxes was instead diverted into the Oppers' pockets, leaving Spartech with a larger tax liability than its deal with the Oppers had provided for.

■ So Spartech was a proper party plaintiff; even so, if Equipment was an indispensable party plaintiff, it is as if it had been named as a plaintiff, destroying complete diversity and requiring dismissal of the suit. *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 559–60 (5th Cir.1985); *H.D. Corp. v. Ford Motor Co.*, 791 F.2d 987, 992–93 (1st Cir.1986). But we do not think Equipment was indispensable. Spartech's suit against the Oppers was based on their promise to Spartech, a promise that either created a contract between Spartech and the Oppers or imposed a fiduciary duty on the latter, or both. Equipment was not a party to the contract but rather the subject of it. It is as if the purchase had been not of a corporation but of a carload of caviar on which taxes turned out to be due; the caviar would not be an indispensable party. This case seems more difficult only because Equipment was the taxpayer, at least in the first instance. But we cannot see what practical difference that makes. The test for an indispensable party is whether justice cannot be done unless it is joined. See Fed.R.Civ.P. 19(b); *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109–11, 88 S.Ct. 733, 737–39, 19 L.Ed.2d 936 (1968); *Sokaogon Chippewa Community v. Wisconsin*, 879 F.2d 300, 303–05 (7th Cir.1989). That condition is not met here. The Oppers cannot even tell us what difference it would make if Equipment were a party. Cf. *U.S.I. Properties Corp. v. M.D. Construction Co.*, 860 F.2d 1, 6–7 (1st Cir. 1988).

It would be a different case if Spartech were suing for a wrong done to its subsidiary Equipment. Then Equipment would be an indispensable party, as was held in the *Freeman* case. See also *Chesco Co. v. National Gypsum Co.*, 649 F.Supp. 65 (E.D.N.Y.1986). The promise ran to Spartech, and its breach resulted in Illinois' dunning Spartech for unpaid taxes. Equipment was not a victim but a conduit, and

was not even under the control of Spartech, but of the defendants' agent, Apelco.

The deeper concern in a case such as this is that we not allow the limitations on the diversity jurisdiction to be got round by the facile expedient of a subsidiary's assigning its cause of action to its parent. Such a course of action would violate 28 U.S.C. § 1359, which makes assignments intended to confer federal jurisdiction ineffectual for that purpose. See *Hartford Accident & Indemnity Co. v. Sullivan*, 846 F.2d 377, 382 (7th Cir.1988). *Freeman*'s Rule 19(b) analysis is another way of skinning the same cat. It may seem that Equipment made a de facto assignment of its tax liability to Spartech—or rather that Spartech, a nonresident corporation, arranged for the assignment, in order to be able to sue a passel of Illinoians in federal court. This might well be the correct characterization if Spartech controlled Equipment, or indeed if Equipment controlled itself. But neither condition is satisfied. The agreement with the Oppers placed Apelco, their company, in control of Equipment's expenditures. When the Oppers broke their promise to pay all of Equipment's expenses out of Equipment's revenues, Spartech found itself in a situation where its subsidiary was accruing not only simple tax liability, but also liability for interest on taxes past due and for penalties for failure to pay the taxes. Moreover, the State of Illinois was trying, with some prospect of success, to impose that liability on Spartech. Having paid on Equipment's behalf some of the taxes that Equipment owed the state, Spartech was within its rights in suing the Oppers, who controlled Equipment's finances through Apelco, for the rest (minus income which Spartech itself received that should have gone to pay taxes). It would be weird if an entity controlled by one of the defendants were the real party plaintiff—yet that at bottom is what the Oppers are contending.

There is a close affinity between the suit Spartech brought, and the derivative suit it might have brought as Equipment's sole shareholder on Equipment's behalf against the Oppers. In a derivative suit the relevant citizenship is that of the shareholder-

plaintiff and of the defendants, not that of the corporation, which realistically is the tool rather than the adversary of the defendants. See cases cited in *F. & H.R. Farman–Farmaian Consulting Engineers Firm v. Harza Engineering Co.*, 882 F.2d 281, 284 (7th Cir.1989). The analogy confirms us in our view that the present case is within the diversity jurisdiction.

The merits do not require extended discussion—illustrating one of the objections to diversity jurisdiction: its inordinate jurisdictional complexity. There is *au fond* only one issue on the merits, whether any of the district court's critical findings of fact are clearly erroneous, and they are not. Regarding the Oppers' liability for breach of fiduciary duty (realistically, it seems to us, for breach of contract), the promise to pay expenses plainly embraced taxes, since Spartech insisted that it wanted to have nothing to do with the operation of Equipment. From its standpoint this was entirely a financial, not an operating, transaction. The Oppers were to take care of all the expenses, and taxes are an expense. It is true that taxes were not foreseen as an expense, because the parties mistakenly believed that Spartech's net operating loss carryforwards would offset every penny of Equipment's tax liability. But when a party to a contract agrees to pay expenses, he agrees to pay the unforeseen as well as the foreseen, subject to defenses not invoked here of impossibility, frustration, *force majeure*, and the like.

There was, it is true, a mutual mistake, but the Oppers err in arguing that the presence of a mutual mistake automatically excuses the promisor. See *Keller v. State Farm Ins. Co.*, 180 Ill.App.3d 539, 548, 129 Ill.Dec. 510, 516, 536 N.E.2d 194, 200 (1989). A principal purpose of contracts and contract law is to allocate the risk of the unexpected in accordance with the parties' respective preference for or aversion to risk and their ability or inability to prevent the risk from materializing—not to place it always on the promisee. See, e.g., *Fidelity & Deposit Co. v. City of Sheboygan Falls*, 713 F.2d 1261, 1269 (7th Cir. 1983), and references cited there. The district judge was not guilty of clear error in finding that the parties had implicitly assigned the burden of the mistake about tax liability to the Oppers. It was a mistake about expenses and not so burdensome a one as to discharge the promisors.

Spartech's cross-appeal questions the district judge's finding that the Oppers did not misrepresent the extent of Equipment's deferred tax liability and also questions the district court's disposition of the statute of limitations defense to Spartech's Rule 10b–5 claim. On the first of these points it is enough to say that the finding on misrepresentation was not clearly erroneous. The disposition of the limitations issue turned on a factual finding, also not clearly erroneous, that Spartech had all the information it needed to determine its deferred tax liability, and so could not have been misled. See *Norris v. Wirtz*, 818 F.2d 1329, 1334 (7th Cir.1987). That issue may also be moot, since the finding, which we have just upheld, that there was no fraud knocks out the 10b–5 claim, along with the common law fraud claim, by the principle of collateral estoppel.

AFFIRMED.