100 F.3d 476
 UNITED STATES ex rel. Glenn A. HALL, Michael A. Mapes, and Fred Tribble, Plaintiffs-Appellants,
v.
TRIBAL DEVELOPMENT CORPORATION, a Wisconsin Corporation, John Doe Corporation, John Doe, and Mary Doe Roe, Defendants-Appellees.
 No. 96-1772
 United States Court of Appeals,
Seventh Circuit
 Argued September 19, 1996
Decided October 25, 1996
Rehearing and Suggestion for Rehearing En Banc Denied November 26, 1996
 
 Appeal from the United States District Court for the Eastern District of Wisconsin. No. 93-C-494, Thomas J. Curran, Judge.
 William M. Hart, Steven C. Eggimann, and Christopher Schulte (argued), Meagher & Geer, Minneapolis, MN, for Plaintiffs-Appellants.
 John M. Peebles and Conly J. Schulte (argued), Peebles & Evans, Omaha, NE, for Tribal Development Corporation, Defendant-Appellee.
 Before COFFEY, FLAUM, and MANION, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 We have seen this case before. This is a qui tam action, one of forty-two such actions originally brought in the United States District Court for the District of Minnesota against a number of merchants who supplied Indian tribes with goods and services for the tribes' gaming operations. See United States ex rel. Hall v. Tribal Development Corp., 49 F.3d 1208 (7th Cir. 1995); In re United States ex rel. Hall, 825 F. Supp. 1422 (D. Minn. 1993), aff'd, 27 F.3d 572 (8th Cir. 1994), cert. denied, __ U.S. __, 115 S. Ct. 1112 (1995). Alleging that the contracts between the tribes and the suppliers violated the government approval provisions of 25 U.S.C. sec. 81 and the Indian Gaming Regulatory Act, 25 U.S.C. sec. 2711, and the licensing requirement imposed by 25 U.S.C. sec. 264, plaintiffs sued on behalf of the United States under sec. 81 and 25 U.S.C. sec. 201. Pursuant to sec. 81, plaintiffs sought rescission of the contracts and a refund of monies paid thereunder, one half to be paid to the Treasury for the tribes' use, the other half to the plaintiffs as a reward for their efforts. Plaintiffs also sought recovery of civil penalties and forfeiture of all equipment leased or sold to the tribes. See 25 U.S.C. secs. 201, 264, 2713.
 
 
 2
 The present action, involving lease contracts for goods and services between the Menominee Tribe and the defendant, Tribal Development Corporation ("TDC"), was transferred to the United States District Court for the Eastern District of Wisconsin on May 17, 1993. On September 15 of the same year, the Wisconsin District Court, adopting the opinion of the Minnesota District Court in the parallel actions, dismissed plaintiffs' case for lack of standing. We reversed, holding that "Congress has authorized these qui tam relators to act on behalf of and in the name of the United States, which means that they are able to invoke the standing of the United States for purposes of satisfying Article III." 49 F.3d at 1216. One member of the panel noted that the Minnesota District Court's opinion provided an alternative basis for dismissal: the Indian tribes were indispensable parties whose absence compelled dismissal under Rule 19 of the Federal Rules of Civil Procedure. 49 F.3d at 1216 (Flaum, J., concurring). The concurrence suggested that on remand the district court perhaps should "apply independently the relevant Rule 19 factors to the particular circumstances of this case." Id.
 
 
 3
 The district court did precisely that. In an Opinion and Order dated February 28, 1996, the court determined first, that the Tribe was a necessary party under Rule 19(a)(2)(i), next, that the Tribe could not be joined because it enjoyed sovereign immunity, and, finally, that the Tribe was an indispensable party whose absence necessitated dismissal of the action. See United States ex rel. Hall v. Tribal Development Corp., 165 F.R.D. 83 (E.D. Wis. 1996). Applying the four factors set forth in Rule 19(b) to determine whether the Tribe should be deemed an indispensable party, the district court reasoned that a judgment in favor of the plaintiffs undoubtedly would be prejudicial to the Tribe while the plaintiffs' interest in the subject matter of the action was "tenuous and indirect." Id. at 86 (citing United States ex rel. Hall, 825 F. Supp. at 1430). Because we find that the district court properly applied the Rule 19 factors, we affirm.
 
 I.
 
 4
 An initial matter concerns the appropriate standard of review of the district court's Rule 19 dismissal. Appellants argue for de novo review while TDC suggests that the time has come for us to align ourselves with those circuits that have adopted an abuse-of-discretion standard in the Rule 19 context. In Sokaogon Chippewa Community v. Wisconsin, 879 F.2d 300 (7th Cir. 1989), we observed that the more deferential standard has much to recommend it, see id. at 304 (discussing Navajo Tribe v. New Mexico, 809 F.2d 1455, 1471 (10th Cir. 1987)), but we declined to declare ourselves either for or against, and we have declined to do so since, see Wade v. Hopper, 993 F.2d 1246, 1249 (7th Cir.), cert. denied, 510 U.S. 868 (1993); Bourne Co. v. Hunter Country Club, Inc., 990 F.2d 934, 937 (7th Cir.), cert. denied, 510 U.S. 916 (1993); Perrian v. O'Grady, 958 F.2d 192, 196 (7th Cir. 1992). Once again, we postpone the resolution of this question for another day, for under either standard, the district court's ruling passes muster.
 
 II.
 
 5
 Contrary to what the parties appear to believe, this case does not call upon us to resolve any supposed conflict between Rule 19 and the qui tam provisions, or to wrestle with the scope and wisdom of statutes born of a bygone era. (We will cite no nineteenth-century decisions here.) Rather, it calls for a straightforward application of Rule 19 to the particular facts of this case.
 
 
 6
 Rule 19 sets up a bifurcated analysis. First, a court must determine whether an entity is a necessary party or, in the nomenclature of Rule 19, a "Person to be Joined if Feasible." Fed. R. Civ. P. 19(a). Included in this category under subdivision (a)(2)(i) is any person who "claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect that interest . . . ." The Tribe clearly satisfies these criteria. A judicial declaration as to the validity of a contract necessarily affects, "as a practical matter," the interests of both parties to the contract. As a party to the lease contracts at issue here, the Tribe has a commercial stake in the outcome of this litigation. It therefore would appear beyond dispute that the Tribe is a necessary party under Rule 19(a).
 
 
 7
 Nevertheless, the plaintiff-relators object that "the tribe is not a necessary party as its interests are always represented by its trustee, the United States." Although in some circumstances the interests of the United States and an absent tribe might be so aligned as to alleviate any concern for the tribe's ability to protect its interest, this is not always the case. See Confederated Tribes v. Lujan, 928 F.2d 1496, 1500 (9th Cir. 1991) ("[T]he United States cannot adequately represent the Quinault Nation's interest without compromising the trust obligations owed to the plaintiff tribes."); Makah Indian Tribe v. Verity, 910 F.2d 555, 558 (9th Cir. 1990) ("The United States may adequately represent an Indian tribe unless there is a conflict between the United States and the tribe."). Plaintiffs assume that they, acting for the United States, stand in the shoes of the Tribe, that the Tribe is merely "the beneficiary of the government's recovery." Yet it is more likely, given the Tribe's unwillingness to join the present action, that the Tribe would be aligned against the plaintiff-relators if brought into this suit. We therefore cannot conclude that the presence of the United States in any way alleviates Rule 19(a)'s concern for the Tribe's interest in the lease contracts at issue in this litigation. The Tribe is a necessary party to this action.
 
 
 8
 A finding that a party is necessary does not end the Rule 19 inquiry, however. Under Rule 19(b), if the necessary party cannot be joined, the court must decide "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Significantly, subdivision (b) uses the term "indispensable" only "in a conclusory sense, and not as the starting point of analysis." 3A James Wm. Moore, Moore's Federal Practice para. 19.07-2 (2d ed. 1996). In other words, the relevant question is "whether in equity and good conscience the action should proceed" without the absent party; "indispensable" is merely the label applied to the absent party in the event that the court should answer this question in the negative. To help courts navigate the path of equity and good conscience, Rule 19(b) lists four factors: (1) the extent to which "a judgment rendered in the person's absence might be prejudicial to the person or those already parties"; (2) the extent to which relief can be tailored to lessen or avoid prejudice; (3) the adequacy of a judgment rendered in the person's absence; and (4) "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."
 
 
 9
 The first factor--prejudice to the Tribe--involves the same considerations we discussed in concluding that the Tribe is a necessary party under subdivision (a)(2)(i). In this respect, it is worth repeating the oft-quoted observation of the Ninth Circuit that "[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." Lomayaktewa v. Hathaway, 520 F.2d 1324, 1325 (9th Cir. 1975), cert. denied, 425 U.S. 903 (1976); see also Fluent v. Salamanca Indian Lease Auth., 928 F.2d 542, 547 (2d Cir.) (quoting Lomayaktewa, 520 F.2d at 1325), cert. denied, 502 U.S. 818 (1991); Enterprise Management Consultants v. U.S. ex rel. Hodel, 883 F.2d 890 (10th Cir. 1989) (same); Jicarilla Apache Tribe v. Hodel, 821 F.2d 537, 540 (10th Cir. 1987) (same); Niagra Mohawk Power v. Tonawanda Band, 862 F. Supp. 995, 1004 (W.D. N.Y. 1994) (same); Travelers Indem. Co. v. Household Intern'l, Inc., 775 F. Supp. 518, 527 (D. Conn. 1991) ("[T]he precedent supports the proposition that a contracting party is the paradigm of an indispensable party.") (collecting cases). Perhaps this rather sweeping declaration has its limits, but its core principle fully applies here. The plaintiff-relators seek to void contracts between the defendants and the Tribe for the leasing of goods and services that the Tribe needs in order to operate its casinos. Moreover, the Tribe's stake in this matter extends beyond the specific contracts at issue. The Minnesota District Court, in language quoted by the Wisconsin District Court below, took stock of the Tribe's interest:
 
 
 10
 In a larger sense, the precedent set by rescission of transactions freely entered by the tribes would likely be extremely prejudicial to the tribes' long term interest in Indian gaming and the revenue it provides. . . . The message such a judgment would send to outside vendors would be that transactions with Indian gaming enterprises are subject to cancellation at any time and without regard to whether the contracts were freely and fairly negotiated, the extent to which the parties have performed their duties under the contracts or the settled expectations and reliance of the parties. . . . Regardless of whether such a judgment would otherwise constitute the correct application of the law, it would undeniably be prejudicial to the interests of the Indian tribes.
 
 
 11
 In re United States ex rel. Hall, 825 F. Supp. at 1429. We agree that the first of Rule 19(b)'s four factors weighs in favor of dismissal.
 
 
 12
 The second factor also cuts against the plaintiffs. We can see no way that we might shape relief to lessen the potential prejudice to the Tribe, and, not surprisingly, neither party has suggested any. "There is no middle ground--either the transactions violate statutory requirements and are void, requiring payment of all value paid by the tribes, or they comply with the law and are valid." In re United States ex rel. Hall, 825 F. Supp. at 1431.
 
 
 13
 The final two factors concededly militate against deeming the Tribe an indispensable party. The third factor compels us to ask whether a judgment rendered in the absence of the Tribe would be adequate. Unlike the question of prejudice under subdivision (a)(2)(i) and under the first factor of subdivision (b), this third factor, like subdivision (a)(1) of Rule 19,[1] is concerned with the parties before the court rather than the absentee. See Perrian, 958 F.2d at 196. In this case, plaintiffs request a declaration that the contracts between the Tribe and TDC are invalid and the return of funds paid to TDC under the contracts. With TDC named as defendant, there is nothing to prevent a court from ordering this relief. Moreover, this is true even if the Tribe, by virtue of its absence from this action, would be able to challenge the judgment in a subsequent proceeding. See Sindia Expedition, Inc. v. Wrecked & Abandoned Vessel, Known as "The Sindia", 895 F.2d 116, 122 (3d Cir. 1990); Puyallup Indian Tribe v. Port of Tacoma, 717 F.2d 1251, 1255 (9th Cir. 1983), cert. denied, 465 U.S. 1049 (1984). Nonetheless, we are of the view that the ability to accord relief dwindles in importance when compared with the significance of the Tribe's interest in the contracts at issue here. See Wichita & Affiliated Tribes of Oklahoma, 788 F.2d 765, 777 (D.C. Cir. 1986) ("This [third] factor . . . cannot be given dispositive weight when the efficacy of the judgment would be at the cost of the absent parties' rights to participate in litigation that critically affect their interests."). It was our concern under subdivision (a)(2)(i) for the Tribe's "ability to protect that interest" that necessitated our Rule 19 analysis in the first place.
 
 
 14
 Finally, the fourth factor, which looks to whether the plaintiff will have an alternative remedy, also weighs against dismissal. A plaintiff's inability to seek relief, however, does not automatically preclude dismissal, particularly where that inability results from a tribe's exercise of its right to sovereign immunity. See, e.g., Confederated Tribes, 928 F.2d at 1500 ("Courts have recognized that a plaintiff's interest in litigating a claim may be outweighed by a tribe's interest in maintaining its sovereign immunity."); Makah Indian Tribe, 910 F.2d at 558 ("[L]ack of an alternative forum does not automatically prevent dismissal of a suit. Sovereign immunity may leave a party with no forum for its claims.") (citations omitted); Wichita & Affiliated Tribes, 788 F.2d at 777 ("[T]he dismissal turns on the fact that society has consciously opted to shield Indian tribes from suit without congressional or tribal consent."). Particularly in light of the plaintiffs' interest in the contracts that form the basis for this suit--an interest that is, at best, "tenuous and indirect," In re United States ex rel. Hall, 825 F. Supp. at 1430--the fourth factor should not weigh heavily. We conclude that a fair application of Rule 19 to the facts of this case compels dismissal for failure to join an indispensable party, i.e., the Tribe.
 
 
 15
 At first glance, our conclusion suggests a dilemma: If Rule 19 prevents this suit, doesn't it effectively nullify the qui tam provisions upon which plaintiffs rely? This would indeed be a troubling result, for it would be strange if the enforcement provisions of a statutory scheme could be completely undermined by the application of a rule of procedure. But we believe this conundrum is more apparent than real for the very reason that Rule 19, which refers a court to its sense of "equity and good conscience," mandates a case-specific inquiry. "Rule 19(b) sets forth a standard, not a rigid rule." Rhone-Poulenc Inc. v. International Ins. Co., 71 F.3d 1299, 1301 (7th Cir. 1995); see also Makah Indian Tribe, 910 F.2d at 558 ("The [Rule 19] inquiry is a practical one and fact specific, and is designed to avoid the harsh results of rigid application.") (citations omitted); Wichita & Affiliated Tribes, 788 F.2d at 774 ("These four factors are not rigid, technical tests, but rather guides to the overarching equity and good conscience determination.") (internal quotations omitted). Our decision in this case does not eliminate the possibility that in a qui tam action involving different circumstances, a sovereign tribe might not be indispensable under Rule 19.
 
 
 16
 In fact, a case upon which plaintiffs rely highlights the significance of Rule 19's flexibility. Plaintiffs point to Arrow v. Gambler's Supply, Inc., 55 F.3d 407 (8th Cir. 1995), in which the Eighth Circuit opined that the Yankton Sioux Tribe would not have been entitled to intervene as a matter of right under Rule 24 in a qui tam action brought by a Tribe member against Gambler's Supply. Because the language of Rule 24(a)(2)[2] tracks that of Rule 19(a)(2)(i), see Fed. R. Civ. P. 24 advisory committee notes to 1966 amendments, it should follow as a corollary that the Yankton Sioux Tribe would not have been an indispensable party for Rule 19 purposes. Plaintiffs posit that Arrow contradicts our holding today, not to mention the Eighth Circuit's opinion upholding the Minnesota District Court's dismissal of the parallel actions.
 
 
 17
 We think not. The supposed contradiction arises only if one assumes that the facts of Arrow do not differ materially from the present case. Arrow, however, was not a parallel action. In Arrow, the Yankton Sioux had repudiated a management agreement with Gambler's Supply and agreed to pay Gambler's Supply a settlement of $1,420,000. Arrow, a member of the Tribe, then brought an action under 25 U.S.C. sec. 81 claiming that the management agreement and settlement were void for lack of government approval. Prior to trial, Gambler's Supply settled with Arrow for $100,000 (to be divided as required between Arrow and the Tribe). After learning of the settlement, the Tribe made a Rule 19 motion for joinder. The district court barred the motion on the basis of laches.
 
 
 18
 Treating the Tribe's Rule 19 motion as a motion to intervene pursuant to Rule 24, the Eighth Circuit affirmed. The court first ruled that the district court did not abuse its discretion in holding the Tribe's motion untimely. It then went on to consider whether the Tribe would have been entitled to intervene as of right had its motion been timely. The Arrow court said no, finding that Arrow's interests were "not only on the same side as the Tribe, but . . . literally identical," 55 F.3d at 410; see also United States ex rel. Yankton Sioux Tribe v. Gambler's Supply, Inc., 925 F. Supp. 658, 666 (D.S.D. 1996) ("Arrow would make all of the Tribe's arguments, and . . . she was represented by competent counsel who was willing and capable of making the arguments.") (dismissing Tribe's subsequent suit on res judicata grounds). Arrow thus stands in marked contrast to the situation here, where the plaintiffs' and the Tribe's interests are not "identical" but opposed. In addition, we may assume that the Arrow court would have reached the same conclusion had it been presented with a motion to join the Yankton Sioux under Rule 19 (which, in fact, was how the Rule 24 motion initially was framed). Arrow thus demonstrates that recognizing the applicability of Rule 19 to these qui tam actions will not rule them out entirely.
 
 
 19
 There is one final matter that we must briefly address. For the first time on this appeal, plaintiffs suggest in their reply brief, almost as an aside, that the Tribe does not enjoy sovereign immunity as against the United States and that our analysis under Rule 19(b) is therefore beside the point. Not only is this a rather disingenuous argument coming from plaintiffs who have not availed themselves of the opportunity to join additional parties, see 165 F.R.D. at 85, but it is also waived. "We cannot allow an appellant to circumvent the adversarial process by raising new arguments in reply." Parillo v. Commercial Union Ins. Co., 85 F.3d 1245, 1250 (7th Cir. 1996).
 
 
 20
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Under subdivision (a)(1), a person is necessary if "in the person's absence complete relief cannot be accorded among those already parties."
 
 
 [2]
 Rule 24(a)(2) provides as follows: "Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."